**VIKTORIA–SCHAEFER INTERNATIONAL SPEDITIONSGESELLSCHAFT, mbH & CO. KG, et al., Plaintiffs,**

v.

**The UNITED STATES DEPARTMENT OF the ARMY, et al., Defendants.**

Civ. A. No. 86–0493.

United States District Court, District of Columbia.

March 13, 1987.

James K. Stewart, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., for plaintiffs.

Deborah A. Robinson, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In February 1986, plaintiffs sought an order temporarily enjoining the United States Army from performing a group of contracts awarded to their competitors. Plaintiffs alleged that their due process rights had been violated by the Army's determination that, because of alleged lack of integrity, they were not responsible contractors. The Court agreed that plaintiffs had made a strong showing of likely success on the merits, in light of the decision of the Court of Appeals in in *Old Dominion Dairy v. Secretary of Defense*, 631 F.2d 953 (D.C.Cir.1980), and issued a temporary restraining order on February 27, 1986. One month later, the Court approved a stipulation of dismissal signed by both parties. Plaintiffs now seek attorney's fees and expenses under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1986). They also seek to recover attorney's fees and expenses for the preparation of the motion for attorney's fees. For the reasons stated below, plaintiffs' motion will be granted, to the extent that the Court considers it reasonable.

## I

The Equal Access to Justice Act calls for the awarding of attorney's fees and expenses to a qualified prevailing party in civil actions against the United States, unless the United States can demonstrate that its position was substantially justified or that there were special circumstances making a fee award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). The Army does not dispute that plaintiffs are "qualified" parties. And although it disputes that plaintiffs are "prevailing" parties, this dispute is half-hearted. A party is "prevailing" if it succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933–1939, 76 L.Ed.2d 40 (1983). Plaintiffs in the instant case sought termination of four contracts and award of those contracts to itself. Plaintiffs achieved this result; consequently, they are prevailing parties.[1]

█ This leaves two questions. First is whether the Army's position was "substantially justified." Once a party demonstrates that it is qualified and has prevailed, the government bears the burden of demonstrating that its position was substantially justified. *Massachusetts Fair Share v. Law Enforcement Assistance Administration*, 776 F.2d 1066, 1067 (D.C.Cir. 1985). Congress recently amended the fees provision of the Equal Access to Justice Act, in order to make clear that the government's justification would be measured not only by its litigation stance, but also by the acts or omissions underlying the civil action. *See* 28 U.S.C. § 2412(d)(2)(D), *as amended by* Pub.L. No. 99–80, 99 Stat. 183, 185 (1985). In other words, unreasonable agency action will not necessarily be purged—in the sense of averting attorney's fees—by reasonable Justice Department litigation. This broadened definition of "position of the United States" makes the government's burden in avoiding fee awards even greater. *See Massachusetts Fair Share, supra*, at 1068 n. 17.

█ The Army has completely failed to meet this burden. The central fact of this litigation is that, as the Army concedes, the *Old Dominion Dairy* decision required the

---

1. The Army contends that the settlement was unfavorable to plaintiffs because it provided for good faith negotiations, its right to pursue other remedies, and release by plaintiffs of their right to institute actions against the Army's employ- ees. These basically are benefits to which the Army would have been entitled in any event, with or without the settlement; they do not detract from the success achieved by plaintiffs by virtue of the settlement.

government to afford procedural due process to prospective government contractors when it intends to reject an otherwise low and acceptable bid for lack of integrity. More specifically, the *Old Dominion Dairy* decision required that the contractor "be given notice of those charges as soon as possible and some opportunity to respond to the charges before adverse action is taken." 631 F.2d at 955–56. Emphatically, this is what the Army failed to do. On December 13, 1985, the contracting officer determined that plaintiffs lacked integrity, but it did not notify them of that determination until January 8, 1986. In the meantime, the four contracts at issue were awarded to other parties, and plaintiffs completely lost their due process right to contest these awards free from the stigma imposed by the contracting officer. This, of course, was a direct violation of the *Old Dominion Dairy* decision.

The Army attempts to distinguish the instant case from *Old Dominion Dairy,* for example by pointing out that there was "no misleading of the plaintiffs by avoiding the issue during conversation." [2] But plaintiffs are entirely correct in their assertion that if the procedural safeguards of *Old Dominion Dairy* do not fully apply in the instant case—that is, if the Army's position was "substantially justified" because the earlier case is distinguishable—then those procedural safeguards will not fully apply in any case. If anything, the instant plaintiffs' rights were more flagrantly violated, since the contracting officer failed to notify them of the adverse determination for 26 days; in *Old Dominion Dairy,* notification was given within 5 days. And in the instant case, the contracts had been awarded from 9 to 16 days before the notification—leaving plaintiffs

without a reasonable chance to assert their liberty interest by rebutting the integrity charges. Nor is it "substantial justification" for the Army's deprivation of plaintiffs' rights that the Federal Acquisition Regulations do not require prior notification of a nonresponsibility determination. The *Old Dominion Dairy* decision has independently required such notification, in a case like this, since 1980—and it is the Army's responsibility to ensure that its contracting officers are aware of decisions that require it to respect fundamental constitutional rights.[3]

■ An award of fees and expenses is thus proper unless special circumstances make such an award unjust. The Army concedes that the issue of "special circumstances" constitutes a matter of first impression in this Circuit, and argues that the award should be denied because "plaintiffs created the problems that led to the nonresponsibility determinations." [4] Specifically, the Army argues that plaintiffs were found to be nonresponsible because they breached a presumption of liability clause in a number of contracts and they encountered other difficulties.

The Army's arguments here fail in three respects. First, contrary to the Army's evident assumption, plaintiff Viktoria-Schaefer[5] is not the same entity as Viktoria Transport with which the Army had difficulties. Second, it has not been shown that either entity, in the prior contract disputes, was doing anything other than legitimately asserting its rights under German law. Third, even if plaintiffs had been breaching contracts, they still had the same liberty interests under *Old Dominion Dairy* as any individual or company. Those liberty interests still demanded pro-

---

2. Defendants' Opposition at 14.

3. As it did in opposing the injunction, the Army also relies heavily on the ruling in *Shermco Industries, Inc. v. Secretary of the Air Force,* 584 F.Supp. 76 (N.D.Tex.1984). In *Shermco,* the court found that a draft indictment provided plaintiff with sufficient notice, under *Old Dominion Dairy,* that the government was concerned about its integrity. To the extent that *Shermco* is persuasive in this jurisdiction, suffice it to say that plaintiffs in the instant action

received *no* notice of the integrity charges against them for almost a month. Moreover, the *Shermco* decision did not even deal with nonresponsibility determinations, and specifically distinguished *Old Dominion Dairy. See* 584 F.Supp. at 88.

4. Defendants' Opposition at 19.

5. Actually Viktoria-Schaefer International Speditionsgesellschaft mbH & Co. KG.

tection, by notification before adverse action was taken on grounds of lack of integrity. Plaintiffs may indeed have lacked integrity, but under the law of this Circuit they have a constitutional right to be told about it in advance. Consequently, the government has failed to prove special circumstances that would make the award of attorney's fees unjust.

## II

Plaintiffs seek to recover $42,112 in attorney's fees and expenses of $3,811.23 for litigation of their underlying claims. In addition, they seek $8,759.50 in fees and $1,313.83 in expenses incurred in applying for this award of fees under the Equal Access to Justice Act. *See Cinciarelli v. Reagan,* 729 F.2d 801, 809–10 (D.C.Cir. 1984). These requests will be granted, to the extent that they are reasonable and authorized by statute.

The Equal Access to Justice Act allows the prevailing party compensation for attorney's fees at the prevailing market rate, not to exceed $75 per hour, unless the Court determines that an increase in the cost of living, or other special factors, justifies a higher fee. 28 U.S.C. § 2412(d)(2)(A). Cost of living increases are routinely granted in this Circuit, *see Action on Smoking and Health v. Civil Aeronautics Board,* 724 F.2d 211, 218 (D.C.Cir.1984), and plaintiffs correctly increase the basic fee by 17.01 per cent to $87.76 per hour.[6] With five attorneys having billed 379.8 hours, the "lodestar" figure for litigating the underlying claims is thus $33,042.57. *See Action on Smoking and Health,* 724 F.2d at 218 n. 33. Plaintiffs seek to recover this time at the prevailing market rate, however, or $42,112, because of "special factors." These factors are the limited availability of qualified counsel and the exceptional result obtained in this lawsuit.

Before discussing these "special factors" and the proper rate, the total number of hours needs to be determined. The Army correctly points out that the 379.8 figure seems quite high for litigation that took only one month. The Army also correctly notes that plaintiffs have in some cases failed to document, even in general terms, the work done by some of its attorneys. Not only are 7.7 hours of Mr. Matthews' time *entirely* unexplained, but the explanations for the remainder of his work time are—to borrow defendants' label—"sparse ... to the point of being cryptic." Were the Court to allow recovery for Mr. Matthews' unjustified work, it would encourage prevailing parties merely to scrawl any imaginable number of hours and then laugh their way to the bank. Instead, Mr. Matthews' 48.4 hours of "work" will be disallowed, as they are unsupported by evidence within the meaning of 28 U.S.C. § 2412(d)(1)(B). Moreover, Mr. Dinan's allowable time will be reduced from 37.2 hours to 20 hours. The Court realizes that some law firms occasionally thrive on inefficiency, and promote slow work by associates, but Mr. Dinan could hardly have needed 20 hours to research exhaustion of remedies and to "draft a portion" of a memorandum on that topic.[7] Thus, the Court hereby disallows 65.6 hours of billed time, reducing the total to 314.2 hours.

The next question is whether the $87.76 hourly figure will apply, or whether special factors call for increasing this figure to the prevailing market rate of $90 to $125 per hour, depending on the attorney.[8] The Court agrees that the rate billed for Mr. von Maur should be adjusted to $125 per hour because of the limited availability of qualified counsel—in this case, a West German attorney, fluent in English, who specializes in U.S. contract litigation. Similarly, the "extraordinary result" in this case justifies increased rates for the remaining attorneys whose real billing rate

---

6. *See* Application for an Award of Attorney's Fees and Expenses at 27–28 and n. 7. The rate for one attorney, Mr. Dinan, is normally billed at only $80, and will be figured at that level for purposes of this motion.

7. Although Mr. von Maur's explanations of his billing time are not as extensive as those of the

Washington, D.C., attorneys, they at least give the Court some guidance as to how he spent his time. The Court cannot normally know precisely how many of the billed hours are justifiable.

8. *See* Application for Award at 28.

exceeds the $87.76 figure set here. This Circuit has said that such an upward adjustment is proper in the exceptional case in which a party assumes "a real risk of pursuing litigation that has an unlikely outcome." *Hirschey v. FERC*, 777 F.2d 1, 5, n. 18 (D.C.Cir.1985). This Court has only recently recognized that disgruntled procurement contractors face an extremely difficult task in proving their case. *See Computer Data Systems, Inc. v. Lehman*, No. 86-2414 (D.D.C. Oct. 7, 1986) [Available on WESTLAW, DCT database]; *see also Delta Data Systems Corp. v. Webster*, 744 F.2d 197 (D.C.Cir.1984). A case in which a government contractor disputes the award of four contracts to its competitors is thus the risky, exceptional case that deserves extra compensation under the Act. Thus, the fees for all attorneys except Mr. Dinan will be computed at their market rate.

Consequently, the following figures will be used to compute the proper fee award for disputing the underlying claims in this litigation:

| | |
|---|---|
| Reed L. von Maur | 97.3 hours at $125 |
| James K. Stewart | 91.5 hours at $125 |
| Keith R. Anderson | 105.4 hours at $90 |
| Kevin M. Dinan | 20 hours at $80 |

The total award of fees for the underlying claim is thus $34,686.

Plaintiffs also seek $8,759.50 in fees incurred in applying for this fee award, billed at the normal rate for counsel Keith Anderson and James Stewart. However, the total of 30.5 hours (about four solid work days) for drafting a reply brief—part of which is devoted to justifying the fees for that very brief—is patently excessive and will be reduced to 20 hours, the approximate time spent by Mr. Anderson. It may be one thing to work at a snail's pace when the client is paying; it is quite another to work at such a pace when the opposite side is paying. Consequently, the allowable fees incurred in applying for this fee award will be:

9. Plaintiffs justify these expenses in Exhibits C and E(7) to their application, and Exhibit 3 to their Reply.

10. Plaintiffs also seek recovery of $388.80 in charges for LEXIS computer research services.

| | |
|---|---|
| Mr. Stewart | 19.8 hours at $125 |
| Mr. Anderson | 55.4 hours at $90 |

Thus, the total allowable fees incurred in applying for this award is $7,461.

Plaintiffs also claim expenses in the amount of $5,125.06.[9] The Equal Access to Justice Act allows the prevailing party to recover certain expenses. *See* 28 U.S.C. § 2412(d)(2)(A). In *Massachusetts Fair Share, supra,* this Circuit held that duplication expenses are authorized by the Act, but disallowed recovery for taxi fares, messenger services, travel expenses, telephone bills, and postage. *See* 776 F.2d at 1069–70. Most of plaintiffs' expenses fall into the latter category. The Court will allow recovery for duplicating, translations, and transcripts, in the amount of $809.74.[10]

In sum, the amount recoverable by plaintiffs is $42,147 in fees and $809.74 in expenses, for a total of $42,956.74. An appropriate Order accompanies this Memorandum.

Presumably the mounting price of research in the computer age is one factor in increased billing rates for lawyers. To that extent, LEXIS has already been figured in these equations.