Brigadier General Roland F. CINCIARELLI, Appellant,

v.

The Honorable Ronald REAGAN, President of the United States, et al.

No. 83–1289.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 2, 1983.

Decided March 6, 1984.

802

William Stoll Hemsley, Jr., Washington, D.C., with whom Frank A. S. Campbell, Washington, D.C., was on the brief, for appellant.

John Oliver Birch, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before WRIGHT and TAMM, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

Opinion for the court filed by Circuit Judge J. SKELLY WRIGHT.

* Of the Seventh Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d) (Supp. V 1981).

**J. SKELLY WRIGHT, Circuit Judge:**

In this case we review the District Court's denial of a request for attorney fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412 (Supp. V 1981). Appellant, a brigadier general in the Marine Corps reserve, sued the Marines on the ground that his service on temporary active status under a Standard Written Agreement had been impermissibly terminated. In defense the Marine Corps claimed that it had unilateral power to terminate the agreement and that the agreement was in any event void *ab initio* because it violated Marine Corps regulations. At trial on the merits the District Court found the first defense sufficient and did not rule on the second. *Cinciarelli v. Carter,* 490 F.Supp. 302 (D.D.C.1980). A panel of this circuit reversed and remanded for consideration of the second defense. *Cinciarelli v. Carter,* 662 F.2d 73 (D.C.Cir.1981). Shortly thereafter the government settled with Cinciarelli for approximately $365,000. Cinciarelli then brought this suit to recover attorney fees as a prevailing party under EAJA. Section 2412(d) of EAJA permits fee awards in cases like this if the government's litigation position was not "substantially justified." 28 U.S.C. § 2412(d). The District Court refused to award fees to Cinciarelli on the ground that the government's position was substantially justified. *Cinciarelli v. Reagan,* 556 F.Supp. 99 (D.D.C.1983). We affirm in part, reverse in part, and remand for calculation of a partial fee award.

## I. BACKGROUND

The facts underlying General Cinciarelli's claim on the merits are set forth fully in this court's opinion in *Cinciarelli v. Carter, supra,* 662 F.2d at 74–79. We repeat here only those facts important to resolution of the claim for attorney fees.

Cinciarelli has been a reserve officer in the Marine Corps since 1953. By the late 1970's he had attained the rank of colonel and was serving on active duty pursuant to a series of Standard Written Agreements (SWAG's). The armed services grant SWAG's to reserve officers pursuant to 10 U.S.C. §§ 679, 680 (1982). These agreements "provide for definitive terms of active duty and ensure that the Reservist will not be released involuntarily except according to specified procedures, including a hearing before a board of officers." *Cinciarelli v. Carter, supra,* 662 F.2d at 75. The statutory protections accrue "during the period of the agreement." 10 U.S.C. § 680 (1982). On October 17, 1978 the Marines offered Cinciarelli a SWAG providing for five years of active duty service commencing on June 21, 1979. Cinciarelli formally accepted the offer on November 20, 1978.

Early in 1979 Cinciarelli was promoted to brigadier general. Brigadier general is a "general officer" position in the Marine Corps hierarchy. At that time the Marine Corps had congressionally authorized billets for 66 active duty general officers. *See* 10 U.S.C. § 5443 (1976). Cinciarelli's promotion caused unforeseen problems for the Marine Corps brass. Since he was to be on active duty he would have to fill one of the 66 general officer slots. No slot was available to give him, however. Also, under established Marine Corps policy general officer slots went to career rather than to reserve officers. To resolve this problem the Marines withdrew Cinciarelli's SWAG on June 11, 1979, ten days before Cinciarelli was to commence active duty under it.

Cinciarelli then sued in District Court for an injunction ordering his reinstatement on active duty as a brigadier general. He argued that 10 U.S.C. §§ 679, 680 prohibited the Marines from terminating his SWAG without a full hearing. In defense the Marines made two arguments. First, the statutory protections were not yet in effect; according to this argument the "period of agreement" in which protection accrued began on the first day of service under the SWAG. Second, the SWAG was properly terminated because it was void *ab initio;* Marine Corps Regulation 1001.52,

which governs SWAG's, expressly prohibits the grant of a SWAG to a colonel.[1] The District Court accepted the first argument and did not reach the second. The court held that under the statute the "period of agreement" for purposes of statutory protection commenced on the first day of service under the SWAG. On appeal this court reversed on the ground that effectuation of legislative intent behind Sections 679 and 680 required that the "period of agreement" commence when the agreement is signed, not when service begins. The court remanded for evaluation of the Marine Corps' second defense on August 21, 1981. *See Cinciarelli v. Carter, supra*, 662 F.2d 73.

Following a status conference on October 2, 1981 the District Court established a trial schedule by order on October 27, 1981, with trial set for February 16, 1982. Settlement negotiations began in earnest some time late in 1981 or early in 1982. The trial was postponed. On February 22, 1982 Cinciarelli filed an amended complaint alleging a constitutional tort for monetary damages and adding two Marine Commandants as personal defendants. On February 25th the parties settled and the District Court approved the settlement by signing a Stipulation of Dismissal, Joint Appendix (JA) 273. The settlement provided that the government was to pay Cinciarelli $364,-690.80 and give him all retirement credit he would have earned had he actually served under the SWAG. Shortly after settlement Cinciarelli brought this suit claiming attorney fees under EAJA. The District Court rejected the claim, and Cinciarelli appealed to this court.

1. Marine Corps Regulation 1001.52, in pertinent part, succinctly states: *"Colonels.* SWAG's will not be tendered to officers in the grade colonel." *Marine Corps Order 1001.52,* Joint Appendix (JA) 126–129.

2. Appellant has also made a claim for fees under § 2412(b) of EAJA, which permits an award of fees against the government "to the same extent that any other party would be liable under the common law * * *." 28 U.S.C. § 2412(b). This provision incorporates the "American rule" for fee-shifting. The American

## II. ANALYSIS

■ Section 2412(d)(1)(A) of EAJA provides in relevant part:

[A] court shall award to a prevailing party other than the United States fees and other expenses * * * incurred by that party in any civil action (other than cases sounding in tort) brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (Supp. V 1981). The government does not dispute that General Cinciarelli was a "prevailing party" within the meaning of the statute. Cinciarelli is therefore entitled to reasonable fees unless the government can persuade us that its position in this case was "substantially justified." *See Spencer v. NLRB*, 712 F.2d 539, 557 (D.C.Cir.1983) ("government bears the burden of demonstrating that its position was 'substantially justified' "); H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10–11 (1980).[2] The legislative history makes clear that this justificatory burden requires the government to meet a test slightly more stringent than one of reasonableness. *Spencer, supra*, 712 F.2d at 558 (discussing S.Rep. No. 253, 96th Cong., 1st Sess. 8 (1979)). In this circuit the "position" that the government must show was substantially justified is its litigation position, not the prelitigation conduct giving rise to the lawsuit. *Id.* at 557; *Del Manufacturing Co. v. United States*, 723 F.2d 980, 983 (D.C.Cir.1983). Partial awards are contemplated within EAJA's

rule permits a fee award when the losing party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons * * *." *F.D. Rich Co. v. Industrial Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). The record contains virtually no evidence of such vexatious behavior, and the District Court properly rejected appellant's claim under § 2412(b). We affirm that decision for the reasons given in the District Court opinion. *Cinciarelli v. Reagan,* 556 F.Supp. 99 (D.D.C.1983).

statutory scheme; if some but not all of the government's defenses are substantially justified the prevailing party should be compensated for combatting those that are not. *See Spencer, supra,* 712 F.2d at 557 (partial awards will "induce government counsel to evaluate carefully each of the various claims they might make in a particular controversy, and to assert only those that are substantially justified"); *Goldhaber v. Foley,* 698 F.2d 193, 197 (3d Cir. 1983).

The government's litigation position in the present controversy was made up of the twin defenses described in Part I *supra.* In deciding whether this litigation position was "substantially justified" our focus is primarily on the legal merits of the government's arguments. Congress has instructed us that "[w]here the Government can show that its case had *a reasonable basis in both law and fact,* no award will be made." H.R.Rep. No. 1418, *supra,* at 10 (emphasis added). *See Del Manufacturing Co., supra,* 723 F.2d at 988 (Wald, J., dissenting).[3] In this case the government's defenses stand on a different footing, and we will analyze each separately.

*The interpretation of 10 U.S.C. §§ 679, 680.* We first evaluate the government's argument that Sections 679 and 680 did not prohibit the Marine Corps' decision to terminate Cinciarelli's SWAG. Though the statute prohibits termination of a SWAG unless the termination is conducted pursuant to formal procedures including a hearing, the government argues that the Marines could properly terminate Cinciarelli's SWAG without following such procedures. According to the government's argument, the statutory term "period of agreement," during which the statutory protection ap-

plied, began on the first day of service under the SWAG, not on the day the SWAG was signed. Since the Marine Corps terminated Cinciarelli's SWAG on June 11th and the period of service was to begin on June 21, the termination was, the government contended, properly accomplished without resort to the formal statutory procedures.

In Cinciarelli's suit on the merits the District Court found this argument dispositive. The court held "as a matter of law that[,] consistent with the statutory scheme, no rights accrued to Col. Cinciarelli under the SWAG prior to June 21, 1979, the beginning of its term." *Cinciarelli v. Carter, supra,* 490 F.Supp. at 303. A panel of this circuit reversed the District Court on precisely this point. Our opinion held that "[a]lthough this interpretation is not facially unreasonable or inconsistent with the statutory language, we believe it gives insufficient weight to Congress' intention in enacting these statutes and hinders the purposes Congress sought to promote." *Cinciarelli v. Carter, supra,* 662 F.2d at 77. Since Congress intended the statutory protections to promote participation of reservists in active duty service by guaranteeing them a measure of certainty and security as to the length of their service, we decided that "to hold that unilateral withdrawal of an executed agreement at any time before the commencement of the active duty term falls outside these procedural and remedial guarantees would foster the very sort of insecurity * * * that Congress sought to eliminate * * *." *Id.* at 78.

When Cinciarelli brought this EAJA suit the District Court denied the request for

---

**3.** This circuit has recognized one exception to the rule that a court looks to the legal merits of the government's position to determine whether it is substantially justified for EAJA purposes. If the government capitulates immediately in the face of a plaintiff's complaint, then the government's position is in some instances deemed to be substantially justified. *See Del Manufacturing Co. v. United States,* 723 F.2d 980, 985–986 (D.C.Cir.1983); *Spencer v. NLRB,*

712 F.2d 539, 555 & n. 58 (D.C.Cir.1983). Though this exception is anomalous in that it does not compensate a plaintiff for the expense of bringing a suit to which the government concedes no substantially justified defense exists, *see Del Manufacturing Co., supra,* 723 F.2d at 988 (Wald, J., dissenting), the exception has been justified as an incentive to settlement. *See Spencer, supra,* 712 F.2d at 556 & nn. 58, 60.

fees on the ground that the government's interpretation of "period of agreement" for purposes of Sections 679 and 680 amounted to a substantially justified litigation position. In reaching the decision the court relied on three factors: (1) plaintiff made no showing that the government had misled the court; (2) the government had won in the District Court on the merits; (3) the Court of Appeals, in reversing the District Court, explicitly stated that the government's interpretation, adopted by the District Court, "was not facially unreasonable or inconsistent with the statutory language." 662 F.2d at 78.

■ We agree with the District Court that the government's position on this issue was substantially justified, but we stress that the District Court's reasons for so finding do not carry persuasive weight. The plaintiff in an EAJA suit under Section 2412(d)(1)(A) need make no showing that the government misled the court. Once a plaintiff has been shown to be a prevailing party, the burden is on the government to show that its litigation position was substantially justified on the law and the facts. *See Spencer, supra,* 712 F.2d at 557.[4] Also, the government's initial victory in the District Court should not be viewed as dispositive against an EAJA plaintiff. *See Broad Avenue Laundry & Tailoring v. United States,* 693 F.2d 1387, 1392 (Fed. Cir.1982). Though a trial victory might be evidence that the government's position was not frivolous, the court deciding the EAJA case must independently evaluate the position to determine whether it was substantially justified. Similarly, when the EAJA issue turns on a pure question of law—in this case whether the government's interpretation of the statute was substantially justified—the EAJA court

should not place too much weight on prior judicial characterizations of the government's position because these characterizations will in all likelihood not have been made with an intent to resolve EAJA questions. And on review this court will make a *de novo* determination whether a·government litigation position on a pure question of law is substantially justified. *See Spencer, supra,* 712 F.2d at 563.[5]

■ Evaluating the government's position as to the meaning of the term "period of agreement" in Sections 679 and 680, we find that the interpretation, while ultimately wrong, was substantially justified. As the earlier panel of this circuit noted, the government's interpretation of the statutory term was neither facially unreasonable nor inconsistent with the terms of Sections 679 and 680. Though the government must prove its position is more than merely "facially" reasonable to meet EAJA's "substantially justified" standard, the government's reading meets this higher threshold in this case. The phrase "period of agreement" is nowhere defined in the relevant statute. The legislative history evinces no specific congressional intent that "period of agreement" be read as commencing on the day a SWAG is signed rather than the day service commences. And prior to our ruling on the merits of this case, no court had construed the term. Given the lack of clarity in the governing statute and the absence of any definitive construction of that statute, we hold that the government's litigation position on this issue was sufficiently reasonable to qualify as "substantially justified" under Section 2412(d). *See Spencer, supra,* 712 F.2d at 559–560. Resolution of the statutory interpretation issue

---

**4.** The government's position can be found not to be substantially justified regardless of whether any evidence exists suggesting that the government may have misled the court. The proper standard is substantial justification on the law and on the facts, not attempted deception. Attempted deception carries connotations of bad faith, which the EAJA has made actionable in § 2412(b), the provision incorporating the American rule for fee-shifting. *See* note 2 *supra.* Congress passed § 2412(d) to provide fees

in situations not covered by the traditional American rule.

**5.** When in an EAJA suit the issue is whether the government's *factual* argument is substantially justified, the reviewing court will overturn a District Court's determination only if it is clearly erroneous. *See Spencer, supra* note 3, 712 F.2d at 563–564.

turned ultimately on subtle and competing policy judgments. We will not hold the government to a standard of prescience as to which way we would resolve competing policies in this case. Accordingly we affirm the District Court's denial of attorney fees to the extent that reimbursement was requested for combatting the government's first defense.

*The claim that the SWAG was void* ab initio. The government's second defense requires a different analysis. No court has ruled on that defense, either on the merits or on the EAJA issue of substantial justification. On the merits the District Court initially resolved the case on the basis of the government's first defense. When we overturned that decision we remanded for consideration of the second defense, but the parties settled prior to trial on this issue. On the EAJA claim the District Court inexplicably made no finding as to whether the government's second defense was substantially justified. Thus we consider that issue for the first time here.[6]

This defense rests on the premise that Cinciarelli's SWAG was void *ab initio* and therefore could properly be terminated at any time. Marine Corps Regulation 1001.-52 squarely prohibits granting SWAG's to colonels. Since Cinciarelli was a colonel at the time the terminated SWAG was initially offered to him, the government would superficially appear to be on solid ground in claiming that Cinciarelli never had a valid SWAG. Significant record evidence undermines the government's position, however. Regulation 1001.52 was by all indications more honored in the breach than the ob-

servance. The Marine Corps routinely issued SWAG's to colonels. Cinciarelli himself had served pursuant to several SWAG's when he was a colonel. These SWAG's were regularly authorized by the Commandant of the Marine Corps, the officer who promulgated Regulation 1001.52, *see* Marine Corps Order 1001.52, Appendix I to Affidavit of Lt. General Bronars in D.D.C.Civil Action No. 80–8010, JA 126–129, and who possessed the authority to waive that regulation. *See* brief for appellees at 4, 20. In fact, the SWAG at issue in this case was approved by then-Commandant Wilson. *See* Active Duty Agreement, Exhibit B to Affidavit of Roland Cinciarelli in D.D.C. Civil Action No. 80–8010, JA 60–61.

■ In light of these facts, principles of waiver and estoppel cast serious doubt on the reasonableness of the government's second defense. Though the law is clear that the government is not bound by the unauthorized acts of its agents, *Federal Crop Ins. Co. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947), the law in this circuit is equally clear that the rationale of *Merrill "does not extend to a failure to meet a regulatory condition by a government agent who has authority to waive that condition." Molton, Allen & Williams, Inc. v. Harris,* 613 F.2d 1176, 1179 (D.C.Cir.1980) (emphasis in original). When a government official has authority to waive the regulations allegedly violated, "we look instead to the standards of waiver that would govern between private parties." *Id.* Thus when, in the course of making an agreement, an official with pow-

---

6. We note at the outset that the government's decision to settle rather than press to trial on this second defense is not a "substantially justified" litigation position on the facts of this case. Though immediate capitulation might in some circumstances be a "substantially justified" litigation position, and thus obviate the need for evaluation of the strength of the government's case on the facts and the law, *see Spencer, supra* note 3, 712 F.2d at 555 & n. 58; *Del Manufacturing Co., supra* note 3, 723 F.2d at 985–986, settlement in the present case does not fall within this narrow exception to the requirement that

we evaluate the legal merits of the government's position. The government here settled two years after commencement of suit and six months after losing on the appeal of its first defense. Even if we were to evaluate the government's actions in terms of the six-month period, such a time frame is, under the clear law of this circuit, too long to fit within the "immediate capitulation" exception. *Environmental Defense Fund, Inc. v. EPA,* 716 F.2d 915, 921 (D.C.Cir.1983); *see Spencer, supra,* 712 at 555 n. 58. *See* note 3 *supra.*

er to waive a regulation that would bar the agreement acts in a way that signals to a private party an objective intent to waive the regulation, and the private party relies on that behavior, the government official is estopped from voiding the agreement on the basis of the regulation.

■ Under this analysis, the government's position lacks any reasonable basis. The Commandant who approved extension of Cinciarelli's active duty and signed the SWAG at issue here unquestionably has authority to waive Regulation 1001.52. Both his general policy of approving SWAG's to colonels and his specific decision to approve the SWAG at issue here are strong objective indications of an intent to waive the regulation. In response the government argues only that approval for Cinciarelli's SWAG should not be viewed as coming from the Commandant, who merely signed the order—and by implication did not know what he was signing—but as coming from his subordinates, who did all the legwork in preparing the SWAG. *See* brief for appellees at 3, 14. On this view it was not the Commandant who waived Regulation 1001.52 but his subordinates. Since the subordinates lack authority to waive the regulation, the rule of *Merrill* would require us to find that the government is not bound by Cinciarelli's SWAG. *See* brief for appellees at 3, 14.

We note that in this argument the government urges that the subjective intent of the Commandant, not objective indications of his intent, should govern the waiver issue. This is an erroneous view of the law, but even if it were correct the government would not be substantially justified on the facts of this case. To accept the argument that Commandant Wilson did not intend to waive Regulation 1001.52 when he signed Cinciarelli's SWAG, we would have to be persuaded either that the Commandant did not know of the regulation or did not know he was granting Cinciarelli a SWAG. Yet from the record we know that Commandant Wilson was the Marine officer who first promulgated Regulation 1001.52. *See* Marine Corps Order 1001.52, *supra*, JA 126–129. Nor can it be doubted that the Commandant was aware that he had authorized Cinciarelli's continued service under a SWAG. The agreement for Cinciarelli's service from June 1979 to June 1984, which bears the Commandant's signature, explicitly recites the statutory protections pertinent to SWAG's in 10 U.S.C. §§ 679 and 680. *See* Active Duty Agreement, *supra*, JA 60–61. Since the agreement also explicitly notes that Cinciarelli was a colonel, there can be little doubt that in signing the agreement the Commandant knew he was granting a SWAG to a colonel. Perhaps Commandant Wilson simply signed Cinciarelli's SWAG without realizing that he was granting a SWAG to a colonel in violation of a regulation that he had promulgated, but in light of strong record evidence to the contrary and the dearth of factual evidence to support the government on this point, we hold that this litigation position is not substantially justified.[7] We therefore hold

7. We are bolstered in our decision on this issue by the suggestion in *Spencer, supra* note 3, that "when the government *acts* inconsistently, and subsequently loses a civil suit challenging its behavior, it should be obliged to make an especially strong showing that its *legal arguments* were substantially justified in order to avoid liability for fees under the EAJA." 712 F.2d at 561 (emphasis in original). The Marine Corps' decision to terminate Cinciarelli's SWAG on the ground that colonels could not serve pursuant to SWAG's must be characterized as a departure from established policy and practice in light of the routine approval of SWAG's to colonels in the past. As the court in *Spencer* stated: "One of the systemic sources of inequity advocates of the Act sought to eliminate was the ability of the government to use its superior resources to beat into submission the hapless victims of such deviations from customary practices." *Id.* at 560. Though the *Spencer* court recognized that this requirement of an enhanced justificatory burden in such cases stands in some tension with the holding in that case that the EAJA court must look to the government's *litigation position,* the court properly recognized that we must live with this tension "in order most effectually to promote the underlying objectives of the Act." *Id.* at 561.

that Cinciarelli is entitled to fees for expenses incurred in combatting this second defense.

■ *The proper fee award.* Application of Section 2412(d) of EAJA to the present controversy requires a partial fee award. We find "substantially justified" the government's argument that Cinciarelli did not receive the protections of 10 U.S.C. §§ 679 and 680 until his service under the SWAG began. Thus no fees should be awarded for appellant's efforts in combatting this defense. We do not, however, find "substantially justified" the government's argument that Cinciarelli's SWAG could be terminated because it was void *ab initio.* We thus remand to the District Court with instructions to calculate a proper fee award[8] to compensate appellant for all reasonable efforts expended in combatting this second defense. This award should include compensation for expenses combatting the second defense from the initiation of the lawsuit to the present time. In other words this award should include: (1) compensation for proper expenses combatting the second defense during the period in which the government was also pressing its substantially justified first defense,[9] and (2) compensation for all proper expenses during the six-month period between this court's rejection of the government's first defense and settlement.

Additionally we hold that Cinciarelli should receive a partial fee award for expenses incurred in bringing this EAJA suit. Though the District Court did not reach this issue because it denied fees entirely, we hold that Cinciarelli should receive fees for expenses incurred in this EAJA action

that specifically relate to recovery of fees for combatting the government's second defense.

Cases in this circuit applying other fee-shifting statutes have routinely awarded reasonable fees incurred in the course of obtaining fees. *See Alabama Power v. Gorsuch,* 672 F.2d 1, 4 (D.C.Cir.1982) (Section 307 of the Clean Air Act, 42 U.S.C. § 7607(f) (Supp. V 1981)); *Moton v. Bricklayers, Masons & Plasterers Int'l Union,* 543 F.2d 224, 240 (D.C.Cir.1976) (42 U.S.C. § 1988 (Supp. V 1981)). The proper application of EAJA in this situation is not as easy to discern, however, because EAJA's requirement that fees be awarded only when the government's position is not substantially justified complicates the issue. Whenever the government defends an EAJA claim on the ground that its litigation position in the underlying action was substantially justified and the government loses, the court has in effect decided that this position was unreasonable or, at best, barely reasonable. It would seem to follow in most cases that the decision to contest the EAJA application could not have been substantially justified because the position that the government claimed was "substantially justified" in the underlying action will have been shown to have been unreasonable. In these cases the victorious EAJA plaintiff should receive fees for its pursuit of the EAJA action. Of course in cases at the margin—where the government's position in the underlying litigation on the merits was not found to be substantially justified but the question was a close one—it cannot be said that the government's decision to contest an EAJA fee application is not substantially justified.

---

8. We note that the District Court must calculate an hourly rate of compensation for the attorney's efforts here. We direct the District Court's attention to this circuit's recent EAJA case, *Action on Smoking and Health v. CAB,* 724 F.2d 211, 216–220 (D.C.Cir.1984), for guidance in determining the proper hourly rate.

9. Such an award is required to compensate Cinciarelli adequately here because a large percentage of pretrial discovery involved Cinciarelli's

attempt to develop a factual record in response to the government's second defense. The first defense—a pure question of statutory interpretation—would have required little in the way of discovery. On remand the District Court should have little difficulty determining how much attorney time was spent combatting the second defense and how much combatting the first defense; these defenses had wholly distinct legal theories and factual bases.

An award of fees in these marginal situations would seem in tension with EAJA's "substantially justified" test.

 This situation admits of no wholly satisfactory resolution. If we apply a *per se* rule that the government pays fees for EAJA litigation whenever it defends an EAJA suit on the basis that its position in the action on the merits was substantially justified and loses, we force the government to pay fees in those marginal cases when defense of the EAJA suit, though unsuccessful, was substantially justified. Yet if we require every victorious EAJA plaintiff to make a separate claim for fees for bringing the first EAJA suit, and permit the government to claim that its first EAJA defense was substantially justified on the merits, we face the distinct possibility of an infinite regression of EAJA litigation. A successful EAJA plaintiff will bring another suit claiming fees for bringing the EAJA suit, and the government will defend on the ground that its EAJA defense was substantially justified. If the plaintiff wins this suit, yet a third suit will be required to recover fees for the second suit recovering fees. And if the government contests this suit and loses, yet a fourth suit will have been spawned, and so on. In our opinion the *per se* fee-shifting rule is the least objectionable exit from this Kafkaesque judicial nightmare; in most cases a loss on the generous "substantially justified" EAJA threshold strongly indicates that the government is clinging to an unreasonable position.[10] We need not definitively resolve the question here, however, and we decline to do so because no party has briefed or argued it. In the present case the government's second defense in the initial litigation was so weak on the merits that the government's subsequent decision to contest the EAJA application in part on the basis of the purported "substantial justification" for this defense could not conceivably be found to be substantially justified. Thus Cinciarelli's fee award should include compensation for reasonable expenses incurred in pursuing the portion of this EAJA action that specifically relates to combatting the government's argument that its second defense was substantially justified.

### III. CONCLUSION

Application of EAJA to the present controversy requires an award to Cinciarelli of reasonable attorney fees for combatting the government's second defense. We therefore affirm the District Court's decision to deny Cinciarelli fees for combatting the government's first defense but reverse the court's denial of fees for combatting the second defense and remand for a determination of reasonable attorney fees and expenses under EAJA, consistent with the foregoing discussion of the proper scope of the fee award.

*Affirmed in part and reversed and remanded in part.*

---

**10.** We intimate nothing about the situation where the government raises a technical defense—such as untimely filing—to an EAJA application.