**NATIONAL COALITION AGAINST THE MISUSE OF PESTICIDES, et al., Petitioners,**

v.

**Lee M. THOMAS, Administrator, Environmental Protection Agency, et al., Respondents.**

**NATIONAL COALITION AGAINST THE MISUSE OF PESTICIDES, et al., Petitioners,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, et al., Respondents.**

Nos. 86–1114, 86–1535.

United States Court of Appeals, District of Columbia Circuit.

April 17, 1987.

Joyce Hens Green, District Judge, sitting by designation, concurred and filed opinion.

———————

Letitia J. Grishaw, Atty., Dept. of Justice and Cara S. Jablon, Atty., E.P.A., Washing-

ton, D.C., were on the EPA's response upon remand, for respondents.

John M. Himmelberg, Alexander J. Pires, Jr. and Jeffrey A. Knishkowy, Washington, D.C., were on the opposition to EPA's response upon remand, for petitioners.

The United Mexican States was granted leave to submit a statement as amicus curiae in support of EPA's response upon remand.

Before STARR and WILLIAMS, Circuit Judges, and JOYCE HENS GREEN,* District Judge.

Opinion PER CURIAM.

Concurring opinion filed by District Judge JOYCE HENS GREEN.

PER CURIAM:

This case is before us again following a remand to the agency. Specifically, on January 16, 1987, this court reversed decisions by the Environmental Protection Agency establishing an interim tolerance for the amount of the pesticide ethylene dibromide (EDB) found in imported mangoes. *National Coalition Against the Misuse of Pesticides v. Thomas*, 809 F.2d 875 (D.C.Cir.1987). EPA had determined under the Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. § 346a(b) (1982), that the severe impact of an EDB ban on the economies of foreign mango-producing countries and the low health risk posed by EDB justified a level of 30 parts per billion (ppb) of the pesticide in the edible pulp of imported mangoes through September 30, 1987. *See National Coalition*, 809 F.2d at 876–78.[1] We held that EPA acted arbitrarily and capriciously by (1) "relying exclusively on concerns for foreign well-being ... without considering the factors specified as [relevant] in the FDCA and factors of for-

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a).

1. As we recounted in some detail in our prior opinion, EPA originally decided in January 1985 to end the 30 ppb tolerance and to establish a zero tolerance as of September 1, 1985; in fact, a zero tolerance duly went into effect on that date. *National Coalition*, 809 F.2d at 876–77. Not long after the ban took effect, however,

EPA proposed reviving the 30 ppb tolerance in response to entreaties from high officials in the State Department and the Department of Agriculture. *Id.* at 77. In February 1986 EPA promulgated a final rule reviving the 30 ppb level through September 1986. In September 1986, the agency further extended the interim tolerance through September 30, 1987. *Id.* at 878.

eign impact related to those factors enjoying express Congressional approbation," *id.* at 883; and (2) "reversing its position on the health risks of EDB" without explaining this reversal, *id.* at 884. Rather than setting aside the orders immediately, we withheld issuance of mandate for thirty days and directed EPA in the meantime to "address the issues discussed in this opinion and to decide ... whether an interim tolerance of 30 ppb EDB (or any level other than zero) in imported mangoes is justified." *Id.* at 884. The issue now before us is whether EPA's action on remand complies with our instructions and withstands petitioners' renewed attack.

EPA's response takes the form of an affidavit by A. James Barnes, Deputy Administrator of EPA, and several supporting documents. Mr. Barnes states that in accordance with the legal framework set out in our opinion EPA has now made the determination that "an interim tolerance of 30 [ppb] of EDB on mangoes until September 30, 1987, is justified, is adequate to protect the public health, and will best serve the interest of assuring an adequate and wholesome food supply." [2] Barnes Affidavit at 2 ¶ 5. This determination, Mr. Barnes continues, "is not based on an assertion that there has been a change in the health risk posed by [EDB] since the Agency's statement regarding those risks in January 1985." *Id.* at 2 ¶ 6.[3] Rather, EPA has now concluded:

[T]he very low risk posed by the consumption of mangoes with EDB residues is acceptable because such risk is outweighed by the greater risks to the wholesomeness or adequacy of the nation's food supply that would be posed by revoking the EDB tolerance between now and September 30, 1987.

*Id.* at 3 ¶ 7.

Revoking the 30 ppb tolerance of EDB now, Mr. Barnes predicts, could be seen as an unfair and unduly abrupt action by mango-producing nations, which have channeled mango revenues into developing alternatives to EDB treatment (most notably a hot water dip treatment) and which will likely have that alternative in place this year. In Mr. Barnes' judgment, revocation at this point could damage cooperative efforts that have characterized relations among the U.S. and various food-exporting nations. Since effective enforcement of food safety laws depends upon such cooperation, a ban might increase the risk that fruit and vegetables would enter the U.S. treated with unsafe levels of pesticides or infested with pests or diseases. *Id.* at 876–77.

Petitioners maintain that EPA's action on remand does not satisfy the concerns elucidated in our prior opinion.[4] First, they read our opinion to foreclose consideration by EPA of the health risks occasioned by a zero EDB tolerance.[5] They further argue

---

**2.** As indicated in the text, the determination by EPA on remand was made by the Deputy Administrator of EPA and purports to approach anew the question of a continued EDB tolerance on imported mangoes, employing the legal framework articulated in our prior opinion and assessing recent developments, notably significant progress by Mexico and Haiti in implementing alternative treatment methods for mangoes. Prior EPA decisions on the EDB tolerance for imported mangoes, in contrast, appear to have been made at a lower level in the EPA hierarchy, namely by J.A. Moore, Assistant Administrator for Pesticides and Toxic Substances. *See* 51 Fed.Reg. 34,469, 34,472 (1986) (final rule extending 30 ppb tolerance through Sept. 1987), Joint Appendix, No. 86–1535 ("J.A. II"), at 3, 6; 51 Fed.Reg. 5682, 5684 (1986) (final rule extending tolerance through Sept. 1986), Joint Appendix, No. 86–1114 ("J.A. I"), at 178, 180; 50 Fed.Reg. 48,799, 48,800 (1985) (proposing extension

of 30 ppb tolerance through Sept. 1986), J.A. I at 21, 22.

**3.** We noted in our prior opinion, *National Coalition,* 809 F.2d at 884 n. 9, that EPA has consistently calculated the increased risk of cancer to an individual consuming the average number of EDB-fumigated imported mangoes for one year as in the range of $1 \times 10^{-6}$ to $1 \times 10^{-7}$.

**4.** Petitioners mount their latest challenge pursuant to this court's order of February 19, 1987, in which we further withheld issuance of mandate pending consideration of EPA's Statement Upon Remand and invited petitioners to respond to EPA's Statement.

**5.** Petitioners rely on the passage of the panel opinion in which we stated, after concluding that EPA had reversed without explanation its position on the health risk of EDB, the following:

that even if we did not preclude EPA from assessing the health impact of a ban, EPA's determination on remand that the risks associated with a zero tolerance outweighed those of an interim 30 ppb tolerance was based on conjecture. Finally, petitioners maintain that EPA is to blame for any frustration experienced by foreign countries by virtue of an EDB ban and for any consequent damage to enforcement of U.S. health laws; the agency's improper revival of the 30 ppb tolerance in February 1986 encouraged countries, unwisely, to rely on short-term continuation of a non-zero tolerance. EPA should not, in petitioners' view, now be permitted to justify its latest action in light of the difficult situation that its own conduct has in large measure brought about.

■ We are persuaded, upon analysis, that EPA has now approached the issue at hand with proper attention to factors relevant under the FDCA; in addition, we are satisfied that the agency has resolved the matter in a reasoned fashion. EPA has placed the public health and factors of foreign impact related to the public health at the forefront of its deliberations, in accordance with section 408(b) of the FDCA. *National Coalition,* 809 F.2d 875 at 881–82. Specifically, EPA has concluded that discouraging mango-producing nations from cooperative efforts to comply with U.S. food and drug laws poses a greater health threat than continuation for approximately six months (through September 1987) of a

> Accordingly, if EPA on remand in any respect relies on an assessment of the health risk attributable to consumption of EDB on mangoes [11] that is lower than the assessment underlying its January 1985 determination, it must adduce a legally adequate explanation.

---

[11] As opposed to the health risks attributable to elimination of the use of EDB on mangoes.

*National Coalition,* 809 F.2d at 884 & n. 11. In petitioners' view, this "unequivocally put EPA on notice that [the court] would *not* consider arguments by EPA relating to 'the health risks attributable to *elimination* of the use of EDB on mangoes.'" Petitioners' Opposition to EPA's Statement on Remand 8 (Feb. 27, 1987) (petitioners' emphases). As we explain, *infra* note 6 and accompanying text, petitioners misconstrue our instruction to EPA in this regard.

30 ppb tolerance. This avenue was indeed left open to the agency, for we did not, as petitioners would have it, forbid EPA to balance the health risks of a ban against those of an interim tolerance. On the contrary, we recognized that EPA's duty to establish tolerances "necessary to protect the public health" might require this judgment. *Id.* at 882.[6]

■ Moreover, EPA reasonably concluded that a ban could pose a threat to the integrity of the Nation's food supply. For one thing, a ban would remove an important source of funding for implementation of alternative treatments. For another, EPA reasonably could have inferred that diminution of cooperative efforts to ensure food safety on the part of foreign countries would flow from an on-again, off-again policy. The agency heard strong expressions of protest not only from affected countries and the State Department but also from high U.S. government officials charged with administering the food safety laws.[7] While it is doubtless true, as petitioners emphasize, that EPA's conduct contributed measurably to this state of affairs, this does not alter the agency's duty now to respond to the difficult situation in a principled fashion and in accordance with the statute. EPA reasonably and lawfully concluded that considerations of public health warrant following the course laid down in its decisions of February and September 1986.

---

**6.** Petitioners err in their reading of part of our previous opinion by concluding that this court forbade EPA from considering the health risks of an EDB ban. In the passage on which petitioners relied, *see supra* note 5, the court instructed the agency to explain why it had changed its view of the health risk of EDB if this view had in fact changed.

**7.** We find EPA's consideration of the views of high officials of other government agencies particularly appropriate in the context of fixing tolerances for pesticides, in light of the fact that EPA's role in this regulatory arena is comparatively narrow. Thus, EPA's ability to make informed decisions may be enhanced by the views of those agencies with broader responsibility for ensuring disease-free, pest-free fruits and vegetables with acceptable levels of pesticides. *See* Barnes Affidavit at 4 ¶¶ 9–11.

At the same time, EPA has expressly warned that the path the agency has temporarily taken will end shortly. Specifically, EPA has stated that it "will not be receptive to any extension of [the 30 ppb tolerance] beyond September 30, 1987." 51 Fed.Reg. 34,471, J.A. II at 5; *see also* 51 Fed.Reg. 28,604 (same), J.A. II at 2. This declaration clearly serves notice that, in the agency's considered view, any failure to implement an alternative to EDB treatment will not, standing alone, justify further extensions. Nor, as we understand EPA's position, will resubmission of the evidence of attendant economic dislocation that EPA has already considered at length in establishing the September 1987 termination date [8] justify in the agency's view yet another step down an otherwise long road of temporary extensions.

In sum, we are satisfied that EPA's decision on remand to leave in place a 30 ppb tolerance for EDB in imported mangoes through September 30, 1987, is reasonable under the circumstances presented and that it is consistent with the mandate of the FDCA.

*Judgment accordingly.*

JOYCE HENS GREEN, District Judge, concurring:

I concur in today's decision on the expectation that the Environmental Protection Agency ("EPA") will soon halt its journey down the "otherwise long road of temporary extensions" [1] of the 30 ppb tolerance level for the pesticide ethylene dibromide on imported mangoes. Given our earlier condemnation of the agency's past record in promulgating the tolerance regulations, I feel compelled to write separately to make crystal clear that further extensions of the tolerance after September 1987 would, to me, be wholly unacceptable.

As we emphasized in our previous opinion, 21 U.S.C. § 346a (1982) "clearly man-- dates that health factors and issues of foreign impact related to the health of U.S. consumers be at the forefront of EPA's deliberations." [2] Continuance of the tolerance for six months, until September 1987 when it is due to expire, is justified only because revoking the tolerance now, in the midst of the spring growing season, could cause economic dislocation in Mexico and other mango-producing countries and might adversely affect the production of "an adequate, wholesome, and economical food supply." 21 U.S.C. § 346a(b). *See* Barnes Affidavit. Specifically, EPA justifies a continuance on the theory that revocation will give mango-producing countries less reason to cooperate with the United States' efforts to prevent pests and infested foodstuffs from crossing our borders. *Id.* ¶ 12. Although the record on remand is sparse, I would agree that EPA has now established the necessary analytical link between foreign economic harm and domestic food and health concerns.

EPA's justification for the current extension, though, loses force after the end of this growing season. In my opinion, our decision today provides foreign countries more than ample warning of the unacceptability of further extensions of the tolerance and allows those countries sufficient opportunity to plan ahead, financially and otherwise, for a transition to alternative disinfestation techniques. That such progress is possible is evident from EPA's representations that approval of alternative disinfestation techniques in Haiti is likely to occur soon and that "approval of the [alternative] method for mangoes from Mexico likely will occur this year." *Id.* ¶ 7. With termination of the present extension, EPA can unequivocally reaffirm its primary mandate in setting tolerance levels: protection of the health of domestic consumers.

8. *See* 50 Fed.Reg. at 48,799, J.A. I at 21; 51 Fed.Reg. at 5682, J.A. I at 178; 51 Fed.Reg. at 34,469–70, J.A. II at 3–4; *see also, e.g.,* Letter from J. Michel, Acting Ass't Sec'y for Inter-American Affairs, Dep't of State, to F. Green, Assoc. Admin. for Int'l Activities, EPA (undated), J.A. I at 358–59.

1. *National Coalition Against the Misuse of Pesticides v. Thomas,* 809 F.2d 875, 877 (D.C.Cir. 1987).

2. *Id.* at 882.