840 F.2d 957
 268 U.S.App.D.C. 250, 18 Envtl. L. Rep. 20,573
 UNION OF CONCERNED SCIENTISTS, et al., Petitioners,
v.
U.S. NUCLEAR REGULATORY COMMISSION and the United States of
America, Respondents,
Nuclear Utility Backfitting and Reform Group, Intervenor. (Two Cases)
 Nos. 85-1757, 86-1219.
 United States Court of Appeals,
District of Columbia Circuit.
 March 4, 1988.
 
 Diane Curran, Andrea Ferster and Ellyn R. Weiss, Washington, D.C., were on petitioners' motion, for attorneys' fees and costs.
 William H. Briggs, Jr., Solicitor, and G. Paul Bollwerk, III, Sr. Atty., U.S. Nuclear Regulatory Com'n, Washington, D.C., were on respondent's, U.S. Nuclear Regulatory Com'n, opposition to motion.
 On Petitioners' Motion for Attorneys' Fees and Costs
 Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.
 Opinion PER CURIAM.
 
 
 1
 Dissenting opinion filed by Circuit Judge WILLIAMS.
 
 PER CURIAM:
 
 2
 The Court has reviewed the request for attorneys' fees and costs filed by the Union of Concerned Scientists (UCS). In the case in chief, Union of Concerned Scientists v. U.S. Nuclear Regulatory Commission, 824 F.2d 108 (D.C.Cir.1987), this court vacated the Nuclear Regulatory Commission's (NRC) "backfit" rule for reasons stated in that opinion. While the court did not uphold all of the challenges made to the backfit rule, it held that the rule was invalid on the ground that it violated the Atomic Energy Act of 1954, 42 U.S.C. Sec. 2011 et seq., (the Act). Since UCS contended that the rule was invalid, and NRC insisted that it was valid in all respects, UCS clearly was the "prevailing party" within the meaning of the Equal Access to Justice Act (EAJA), 28 U.S.C. Sec. 2412 (1982). Throughout this court's proceeding, NRC argued for the validity of its rule. The court rejected NRC's position, stating "We think that the vulnerability of the rule to this and other impermissible interpretations compels our vacating the rule. In our view, the backfitting rule is an exemplar of ambiguity and vagueness...." 824 F.2d at 119. The court went on to say "Because we find that the rule's treatment of economic costs demands that we vacate the rule in its entirety, we do not reach petitioners' other challenges to aspects of the rule." We concluded by saying "Because the Commission's rule allows the Commission to consider costs under the adequate-protection standard, and therefore expands beyond the bounds of the statute the Commission's authority and discretion, the rule does not pass muster." Under these circumstances, we find that the NRC's position was "not substantially justified" within the meaning of EAJA. The court is mindful of the admonition of the Supreme Court that "A request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Under such a mandate, we find no authority for the kind of revisitation to the main litigation that our dissenting colleague deems necessary.
 
 
 3
 Accordingly, petitioners are awarded attorneys' fees in the amount of $59,810.00 and costs in the amount of $703.35. The award of attorneys' fees is based on the statutory cap of $75.00 per hour, enhanced by a cost of living increase, as authorized by the statute, to $91.30 per hour. The request for an hourly fee based on special circumstances is denied.
 
 WILLIAMS, Circuit Judge, dissenting:
 
 4
 The majority today awards attorneys' fees to petitioner Union of Concerned Scientists ("UCS") in its challenge to "backfit" regulations promulgated by the Nuclear Regulatory Commission ("NRC" or the "Commission"). In so doing, it effectively treats UCS as a "prevailing party" within the meaning of the Equal Access to Justice Act (the "Act" or the "EAJA"), 28 U.S.C. Sec. 2412 (1982), and characterizes NRC's position as "not substantially justified."[1] I am unable to subscribe to either conclusion.
 
 
 5
 The oddity of this case is that while this court's remand to the agency secured a clarification of the challenged rule, the clarification brought the rule into alignment with a view of the law that petitioners ardently opposed. Thus petitioners did not in any realistic sense prevail, and the agency's primary position was not only "substantially justified" but was vindicated by the court.
 
 
 6
 The government's victory on the primary issue, with the necessary result of its being substantially justified, leaves two possibilities under our cases: UCS is entitled to no fees if (as I believe) Battles Farm Co. v. Pierce, 806 F.2d 1098 (D.C.Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2176, 95 L.Ed.2d 832 (1987), controls; otherwise only to fees apportioned to the narrow area where the agency's resistance was not substantially justified. The apportioned sum might amount to 3% of the total fees.[2] Yet the majority awards $59,810, computed as fees for the entire litigation.
 
 PREVAILING PARTY
 
 7
 Although Congress did not define "prevailing party" in the Act, the Supreme Court has said (in the context of another feeshifting statute with the same phrase) that a party may be considered to have prevailed if it "succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (emphasis added); see also Hirschey v. FERC, 760 F.2d 305, 309 (D.C.Cir.1985) (applying Hensley in EAJA context); Massachusetts Fair Share v. Law Enforcement Assistance Administration, 776 F.2d 1066, 1067 (D.C.Cir.1985) (same). In making the determination whether petitioners prevailed on any significant issue, we must "look to the substance of the litigation to determine whether an applicant has substantially prevailed in its position, and not merely the technical disposition of the case." Austin v. Department of Commerce, 742 F.2d 1417, 1420 (Fed.Cir.1984) (emphasis in original).
 
 
 8
 Our decision resolved two issues. First was the propriety of the agency's considering cost in defining the circumstances when "backfits" were to occur. The petitioners claimed the agency could not do so; they lost flat out. Second was whether the regulations conformed to the law. The way in which petitioners raised this second issue did not remotely correspond to the form in which the court resolved it, for the simple reason that petitioners' whole object was to establish a completely different view of the law. It is therefore hard to view petitioners' achievement on this issue as better than a tie. I here review the two issues and their disposition.
 
 
 9
 Was the Commission authorized to consider cost? Except for sections relating to issues the court never reached, petitioners' main and reply briefs were almost entirely devoted to its claim that the answer to this question was an absolute negative. The scope of petitioners' claim can be gathered from an interchange at oral argument. Petitioners' counsel was asked whether under their view the Commission could adopt one safety requirement for plants not yet started, achieving a modest safety increment, and, with respect to just-completed plants where retrofit would cost hundreds of millions of dollars each, decline to apply the requirement because of cost. While counsel acknowledged that the Commission might decline to apply such a rule to old plants on the grounds that their expected future life was less (and therefore the expected safety value of the improvement), she unequivocally rejected the thought that it could grandfather old plants on the basis of cost. This the court rejected. See 824 F.2d at 118 (majority), 121-22 (concurring opinion).
 
 
 10
 The cost consideration issue can also be broken into subparts, but it helps petitioners not at all. Against petitioners' broad claim, the Commission said that it could not consider cost under one provision, but that, once it had met the safety standards of that clause, it was free to impose safety restrictions under another provision and to bear cost in mind in formulating them. This is exactly the view the court adopted.
 
 
 11
 Specifically, the Commission agreed with petitioners that Sec. 182(a) of the Atomic Energy Act, 42 U.S.C. Sec. 2232(a) (1982), mandating that the Commission secure "adequate protection to the health and safety of the public," forbade cost considerations. But, in sharp contrast to petitioners, it said that Sec. 161(i), 42 U.S.C. Sec. 2201(i), authorizing the Commission to impose such standards "it may deem necessary ... to protect health and to minimize danger to life or property," allowed cost consideration.
 
 
 12
 It is quite true that the majority devoted the bulk of its opinion to the analysis of Sec. 182(a), see 824 F.2d at 114-18, but that does not undermine the fact that the parties were in full agreement on the issue from the start. (I will not here repeat my development of that point, see 824 F.2d at 120-21.) That the majority chose to address the issue at length does not turn its endorsement of the parties' agreed-upon view into a victory for petitioners.
 
 
 13
 Given the parties' agreement on the scope of Sec. 182, the crux of the dispute was the meaning of Sec. 161. Petitioners' claim, it bears repeating, was that the Commission must never consider cost. The court unanimously rejected petitioners' theory. Id. at 118 (majority), 121-22 (concurring opinion).
 
 
 14
 This was the "significant issue" in the lawsuit, the prize petitioners sought. UCS lost and the Commission prevailed.
 
 
 15
 Did the Commission's rule conform to the law? Under petitioners' view of the law, there was of course not the slightest doubt that the rule would have been unlawful. Consequently, petitioners had no occasion to analyze the rule with reference to the view held by the Commission and adopted by the court. In the course of its main brief's recitation of the basic facts, however, the petitioners had drawn some attention to the section of the rule--10 C.F.R. Sec. 109(a)(4)--that ultimately was clarified pursuant to the court's remand. They cited this section merely to show that its exceptions to the rule's general provision for cost-benefit analysis were limited. UCS Brief at 13-17 (reciting some evidence of confusion among NRC Commissioners as to its meaning). Thus, when the court arrived at its view of the law, it was natural to go back and consider whether the rule exactly conformed. Here the court found that while it "conceivably could" adopt that construction, ambiguities in the rule ultimately rendered it "vulnerab[le]" to alternative and illegal constructions. 824 F.2d at 119. Thus the vacation and remand.
 
 
 16
 It remains to evaluate exactly what the remand to the Commission secured petitioners. 10 C.F.R. Sec. 50.109(a)(4) explains that there shall be exceptions to the backfit rule (and its attendant cost-benefit analysis) when the staff finds that any of certain circumstances exists. The first, "(i)," did not change on remand and is irrelevant. What had been "(ii)," was revised and expanded into a new "(ii)" and "(iii)." In comparing the two versions, one must recall that, as the court noted, the Commission has "frequently" in the past used the term "undue risk" as a surrogate for the "adequate protection" standard of Sec. 182. See 824 F.2d at 119. Thus the primary task of the Commission on remand was simply to substitute the exact language of Sec. 182 for the phrase that in Commission parlance had become its functional equivalent. The old and new versions follow:
 
 Old:
 
 17
 (ii) That an immediately effective regulatory action is necessary to ensure that the facility poses no undue risk to the public health and safety.[3]
 
 
 18
 3. For those modifications which are to ensure that the facility poses no undue risk to the public health and safety and which are not deemed to require immediately effective regulatory action, analyses are required; these analyses, however, should not involve cost considerations except only insofar as cost contributes to selecting the solution among various acceptable alternatives to ensuring no undue risk to public health and safety.
 
 New:
 
 19
 (ii) That regulatory action is necessary to ensure that the facility provides adequate protection to the health and safety of the public and is in accord with the common defense and security; or
 
 
 20
 (iii) That the regulatory action involves defining or redefining what level of protection to the public health and safety or the common defense and security should be regarded as adequate. [Here follows a sentence that in the old version was located after subpart (ii).][3] The Commission shall always require the backfitting of a facility if it determines that such regulatory action is necessary to ensure that the facility provides adequate protection to the health and safety of the public and is in accord with the common defense and security.
 
 
 21
 Once one recognizes that "undue risk" is frequently used by the Commission as another way of referring to "adequate protection" as conceived in Sec. 182, it is plain that the revisions, while doubtless clearing up an ambiguity, are little more than detail work, not remotely the victory that petitioners sought.
 
 
 22
 The triviality of this issue is reflected in the page allocation in petitioners' briefs. The issue received four pages in the 68-page main brief in No. 85-1757, and, as noted above, these served only as background establishing that in large areas the rule did provide for cost-benefit analysis. The pages are devoted mainly to demonstrating the Commissioners' conflict over the section's exact scope. The section is not cited at all in the petitioners' 35-page Reply Brief in No. 85-1757.
 
 
 23
 I have discovered no case addressing this exact situation: complete victory for the government agency on the law, coupled with a remand to bring the administrative decision into precise conformity with that view. But the upshot is clearly no more a victory for petitioners than outcomes we have held to be defeats. National Coalition Against the Misuse of Pesticides v. Thomas, 828 F.2d 42 (D.C.Cir.1987) (NCAMP III ), is our most recent look at the meaning of "prevailing party." In the first phase of the litigation, National Coalition Against the Misuse of Pesticides v. Thomas, 809 F.2d 875 (D.C.Cir.1987) (NCAMP I ), the petitioners secured the remand of an EPA order on the ground that EPA had given primary weight to its effect on foreign countries. This approach violated the law, as the court construed it, because it failed to give domestic health concerns the primacy that the statute demanded. Further, the court found that EPA had not adequately explained an apparent shift in position. The EPA reconsidered the issue under our construction of the statute and came out the same way; we affirmed. National Coalition Against the Misuse of Pesticides v. Thomas, 815 F.2d 1579 (D.C.Cir.1987) (NCAMP II ). We rejected petitioners' claim for attorneys' fees under the EAJA, on the ground that they were not prevailing parties within the meaning of Sec. 2412(d)(1)(A). NCAMP III, 828 F.2d at 44-45.
 
 
 24
 Petitioners here clearly did not fare better than those in the NCAMP litigation. The NCAMP petitioners secured a statutory interpretation more favorable to their viewpoint than the one implicitly adopted by the agency, but achieved no change in regulation. Here, petitioners lost utterly on the statutory interpretation issue that was the linchpin of their litigating position. While they secured a modification, it simply made the regulation conform clearly to an interpretation that was anathema to them.
 
 
 25
 In essence, the petitioner in this case is a prevailing party only in the sense that the Allied troops prevailed at the battle of the Somme: hoping for a complete breakthrough, they won only a few square miles, consisting mainly of mud. If the UCS won, it can afford few such victories.[3]
 
 
 26
 3. If immediately effective regulatory action is required, then the documented evaluation may follow rather than precede the regulatory action. If there are two or more ways to achieve compliance with a license or the rules or orders of the Commission, or with written licensee commitments, or there are two or more ways to reach a level of protection which is adequate, then ordinarily the applicant or licensee is free to choose the way which best suits its purposes. Should it be necessary or appropriate for the Commission to prescribe one of these ways to comply with its requirements or to achieve adequate protection, then cost may be a factor in selecting the way, provided that the objective of compliance or adequate protection is met.
 
 SUBSTANTIALLY JUSTIFIED
 
 27
 Even if it can be said that petitioners "prevailed" in some small way, it cannot be said that NRC's position was not "substantially justified." In this situation--government justified and victorious on a key issue but (arguendo ) not substantially justified on one issue--two analyses prevail in this circuit. If the issues are "intertwined," then partial government victory is likely to preclude any award of attorneys' fees. Battles Farm Co. v. Pierce, 806 F.2d 1098 (D.C.Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2176, 95 L.Ed.2d 832 (1987). Otherwise, fees must be apportioned. Cinciarelli v. Reagan, 729 F.2d 801, 809 (D.C.Cir.1984). Under the first, which I believe applicable here, petitioners recover nothing. Under the second, it should also recover nothing because the government's position on 10 C.F.R. Sec. 50.109(a)(4) seems to me to have been substantially justified; even if it were not, petitioners would be entitled only to so much of their expenses as may be allocable to their analysis of that section--perhaps 3% in light of the page allocation in their briefs, see note 2 supra.
 
 
 28
 * In Battles Farm, the plaintiffs made two interrelated claims based on the same statutory language. One claim was relatively noncontroversial, the other novel and far-reaching. The plaintiff prevailed on the first issue, which nine other circuits had already decided plaintiff's way. The government won on the second, more novel claim, which had dramatically more severe cost implications. In ruling on attorneys' fees, we held that the focus of the analysis under Sec. 2412 must be on the government's overall litigating position:
 
 
 29
 [I]f a private plaintiff, in its complaint, combines one adventurous far-reaching losing claim with a more orthodox winning claim, and the two are intertwined, we must consider the justification of the government's entire litigating position.
 
 
 30
 Id. at 1104 (emphasis in original). Second, we went on to hold that the government's overall position was substantially justified, despite the fact that it had chosen to litigate a claim on which nine circuits had already ruled against it.
 
 
 31
 The court noted that the purposes of the EAJA were (1) to encourage private parties to persevere against the government when it took an unjustified litigating position and (2) to discourage the government from using its larger litigation resources unreasonably. As the court put it, the EAJA is an "anti-bully" law.
 
 
 32
 Those purposes compel denial of fees here. Although the exact situation of Battles Farm is not present in this case (government victory on adventurous, far-reaching claim and loss on orthodox narrower claim, the two being intertwined), its analysis applies here a fortiori. The government can hardly be considered a bully regarding the wording of 10 C.F.R. Sec. 50.109(a)(4) when that provision's exact meaning was not a central issue in the case and was referred to by petitioners only as part of the background. The government's brief addressed that section simply to show that the rules conformed to its view of the law. Nothing in the petitioners' position could have led the government to suppose that, by offering to substitute the words "adequate protection" for "undue risk," it could have brought the litigation to an end or even simplified it. Thus the issue on which the government lost was not merely "intertwined" with the larger issues on which it prevailed, but was buried in their interstices; the case was so structured as to make it utterly reasonable for the government not to recede on the issue on which petitioners secured their supposed victory.
 
 B
 
 33
 Even if we look at the issues in the most separated way imaginable, there was nothing unreasonable about the agency's litigating stance. The court noted that "we conceivably could read the terms of this rule to comply with the statutory scheme we have described above," 824 F.2d at 119 (and which NRC advocated). It further noted the Commission's practice of "frequently" using "undue risk" to refer to the "adequate protection" standard of Sec. 182, and found two remarks in the Statement of Considerations supporting the Commission's view that its rule conformed to its view of the law. Only because of two other remarks, one in the Statement of Considerations and one in the Commission's brief, did the court find the rule to contradict its and the Commission's shared view of the law. Id. at 119-20.
 
 
 34
 The test of whether the government's position is substantially justified is roughly whether it was reasonable. See Battles Farm, 806 F.2d at 1101-02 n. 11 (government position must fall "within the bounds of reasonableness") (internal quotes omitted); Massachusetts Fair Share, 776 F.2d at 1068 (test is "slightly more stringent than one of reasonableness") (internal quotes omitted); Nichols v. Pierce, 740 F.2d 1249, 1259 (D.C.Cir.1984) (test is "essentially one of reasonableness," quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10 (1980)). We have been hesitant to find an agency position to be unjustified even when we determined the underlying agency action was "arbitrary and capricious." FEC v. Rose, 806 F.2d 1081, 1087 (D.C.Cir.1986). Cf. Blitz v. Donovan, 740 F.2d 1241, 1244-47 (D.C.Cir.1984) (Secretary of Labor's position substantially justified when it attempted to narrow the interpretation of a statute to save it from constitutional attack); Grace v. Burger, 763 F.2d 457 (D.C.Cir.1985) (government position substantially justified as it had some support in precedent). Typical findings of want of substantial justification have been sharply critical of the government position, as when it had "no legal authority" for its action, Massachusetts Fair Share, 776 F.2d at 1069, or when we "gave no credit whatsoever" to their position, Hirschey v. FERC, 760 F.2d 305, 309-10 (D.C.Cir.1985), or when the position "lack[ed] any reasonable basis," Cinciarelli v. Reagan, 729 F.2d 801, 808 (D.C.Cir.1984). Given that the majority has earlier stated that it "conceivably" could have accepted the government's interpretation of its rule, I cannot understand how that interpretation now lacks the reasonableness necessary for substantial justification.
 
 C
 
 35
 Finally, even if it were proper to focus only on the construction of 10 C.F.R. Sec. 50.109(a)(4), and even if the government position there were not substantially justified, our cases require apportionment where some of the government's defenses are substantially justified, some not. Cinciarelli, 729 F.2d at 804-05; Spencer v. NLRB, 712 F.2d 539, 556-57 (D.C.Cir.1983). See also Goldhaber v. Foley, 698 F.2d 193, 197 (3d Cir.1983). (Under statutes providing for "reasonable" attorneys' fees, an apportionment occurs at the stage of identifying the prevailing party. See Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); Kennecott Corp. v. EPA, 804 F.2d 763, 765 (D.C.Cir.1986).)
 
 
 36
 As petitioners devoted less than 3% of the pages of their briefs to the problem of construing 10 C.F.R. Sec. 50.109(a)(4), that is a fair basis for estimating the share of their expenses devoted to this issue--though, as noted above, their observations on the section were from an utterly different perspective from that of the court.
 
 CONCLUSION
 
 37
 In sum, I find the majority's indiscriminate award of fees to UCS in this case to be unsupported by the terms of the Equal Access to Justice Act or our decisions construing the Act. The EAJA is not an insurance policy for those challenging the government on primarily spurious grounds. I dissent.
 
 
 
 [1]
 The relevant statutory provision provides that "a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified." 28 U.S.C. Sec. 2412(d)(1)(A) (1982)
 
 
 [2]
 In the two cases involved here, petitioners filed 136 pages of briefs. I can find four pages devoted to the issue on which they might be said to have prevailed, see Petitioners' Main Brief in No. 85-1757, at 13-17. 3 percent is a little more than 4/136
 
 
 [3]
 The majority states, "While the court did not uphold all of the challenges made to the backfit rule, it held that the rule was invalid...." Maj.Op. at 958. The first clause is a breathtaking understatement. The court rejected the petitioners' entire legal theory and adopted that of the respondent agency. Though it "held the rule invalid," the only invalidity was that, under the legal view shared by respondent and the court, the rule was not 100% pure--just 99.44%, like Ivory