**MENTAL HEALTH ASSOCIATION OF MINNESOTA, et al., Plaintiffs,**

v.

**Margaret M. HECKLER, Secretary of the United States Department of Health and Human Services, Defendant.**

**Civ. No. 4–82–83.**

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 17, 1985.

---

Mark Bohnhorst and Martha A. Eaves, St. Paul, Minn., for plaintiffs.

Mary L. Egan, Minneapolis, Minn., for defendant.

## ORDER

LARSON, Senior District Judge.

Plaintiffs' motion for a partial award of attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. §§ 2412(a), 2412(b) and 2412(d)(1)(A)(EAJA) was heard on August 29, 1984. The court has considered the affidavits and the memoranda and arguments of counsel. Defendant's memorandum has stated no objection to the request for costs. Plaintiffs maintain that their costs are allowable under any and all of the three sections of the Equal Access to Justice Act cited above as well as under 28 U.S.C. § 1920. *See, Welsch v. Likens,* 68 F.R.D. 589, 595 (D.Minn.1975) *aff'd* 525 F.2d 987 (8th Cir.1975). Defendant does not advance any arguments to the contrary, and plaintiffs will be allowed their costs. Defendant contests the amount of the fees and liability.

## I. THE AMOUNT OF FEES REQUESTED.

■ Defendant objects to the amount of the fee requested on two grounds. First, defendant objects to the hourly rate. Plaintiffs request fees at the rate of $85.00 per hour. Defendant claims that plaintiffs are not entitled to receive even $75.00 per hour. This argument is without merit. Plaintiffs have documented their petition adequately. Moreover, after taking evidence covering 23% of the attorneys in this community, the court in *Rajender v. University of Minnesota,* 546 F.Supp. 158, 167 (D.Minn.1982), determined that the range of hourly rates in 1982 for associates of less experience than plaintiffs' counsel was $60.00 to $100.00, with an average of over $85.00. The quality of representation in this case, the novelty and complexity of the litigation and the result obtained justify the hourly rates of $85.00. Defendant objects that $85.00 per hour exceeds the maximum of $75.00 set by the Equal Access to Justice Act. The legislative history, however, makes clear that Congress contemplated upward adjustments in this figure to account for inflation. *See, Action on Smoking and Health v. CAB,* 724 F.2d 211 (D.C. Cir.1984). This may be an appropriate case for an upward adjustment. Additionally, insofar as fees are based upon bad faith, the EAJA contains no maximum.

The court has decided to limit the hourly rate to $75.00. Plaintiffs have not asked for a multiplier, though because of the high quality of the work of counsel in developing the factual issues a multiplier could be justified. The court is not aware of any case under EAJA where a multiplier has been discussed. The limitation of $75.00 per hour under EAJA (except for bad faith) would appear to preclude a multiplier for quality.

■ Second, defendant objects to payment of any fees to three legal organizations which assisted plaintiffs' counsel with enforcement of the court's order. Such counsel were permitted access to the otherwise private files of class members only

upon associating with plaintiffs' counsel in this case and upon agreeing to subject themselves to the jurisdiction of this court. These organizations performed the same work which the principal lawyers performed in monitoring compliance with the order and functioned as the *alter egos* of principal counsel. Defendant states no objection to the time spent by the principal attorneys on the same tasks. Defendant's objection is not well taken.

## II. THE APPROPRIATENESS OF THE PARTIAL FEE AWARD PLAINTIFFS SEEK.

Plaintiffs are requesting a partial award of fees, covering the time devoted to proving the facts of the case and assuring compliance with the order. Plaintiffs do not seek fees for legal work expended in overcoming various legal defenses of the Secretary asserted here and in the Court of Appeals. These legal defenses related to subject matter jurisdiction, sovereign immunity and scope of relief. On February 8, 1984, the Court of Appeals denied a request for appellate attorneys' fees in this case. Plaintiffs concede that this order necessarily implies that the Court of Appeals considered the legal defenses to be reasonable. These defenses represent distinct legal positions through which the government sought to avoid all or part of the relief requested, irrespective of the lawfulness or egregiousness of its underlying conduct. *See, Spencer v. N.L.R.B.* 712 F.2d 539, 554 & n. 54, 565–67 (D.C.Cir.1983) (exhaustion, standing, mootness, subject matter jurisdiction).

The government asserted not only the legal defenses, it also defended on the facts. Plaintiffs maintain that the factual defense was totally unjustified and in bad faith. They thus seek fees for their factual work in this litigation, while conceding that they will not receive compensation for overcoming the legal defenses.

■ It is appropriate to allow fees as to the government's unreasonable positions while at the same time denying fees with respect to reasonable positions. While the

courts appear divided over the meaning of the term "position" under 28 U.S.C. § 2412(d)(1)(A), they are unanimous in approving the approach advocated by plaintiffs. *See, Goldhaber v. Foley,* 698 F.2d 193, 197 (3rd Cir.1983) (underlying conduct); *Cinciarelli v. Reagan,* 729 F.2d 801, 805 (D.C.Cir.1984) (litigation position); *Dougherty v. Lehman,* 711 F.2d 555, 560 (3rd Cir.1983); *Ellis v. United States,* 711 F.2d 1571, 1576 (Fed.Cir.1983); *Spencer v. N.L.R.B.,* 712 F.2d 539, 556 n. 62 (D.C.Cir. 1983). This court will adopt that methodology.

■ Plaintiffs also claim that in apportioning fees the court should adopt the principles of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Where work was devoted to advancing the litigation as a whole or where factual proofs related both to the reasonable positions and the unreasonable positions of the government, the appropriateness of awarding fees should turn on the nature of the relief obtained. The court agrees that this is the proper approach and is consistent with the *Goldhaber* line of cases.

■ The relief obtained in this case was extraordinary and complete. Plaintiffs estimate that the class has already been benefited in an amount exceeding $30 million, and defendant does not suggest that this estimate is unreasonable. This was a case of first impression involving difficult legal and factual issues. This litigation appears to have aided in a fundamental alteration in disability policies toward the mentally ill at the national level and the abandonment of plainly unlawful policies which were inflicting great harm. Under the *Hensley* approach the partial fee requested by plaintiffs is proper.

## III. PLAINTIFFS ARE PREVAILING PARTIES.

■ Plaintiffs clearly prevailed in this case. Defendant claims, however, that plaintiffs did not prevail in one aspect of the litigation. Defendant claims that the

Court of Appeals granted her substantial relief and modified this court's orders by limiting relief to persons "actually" aggrieved by the presumption. This argument relates to the issue litigated before this court on March 31, 1983, at which time the court rejected the Secretary's argument. Subsequent to the March 31, 1983 order, the Secretary issued instructions which granted relief to all persons who were possibly aggrieved by the unlawful standard. These instructions grant relief to all persons denied on the basis of a determination involving an assessment of residual functional capacity—i.e., to all medical-vocational denials or cessations. The order of the Court of Appeals grants relief to precisely the same group—to those terminated or denied on the basis of an RFC determination, to those for whom the unlawful standard "possibly" had an effect. *Mental Health Ass'n of Minnesota (MHAM) v. Heckler*, 720 F.2d 965, 974 (8th Cir.1983).

The Court of Appeals excluded all cases other than medical-vocational denials, e.g., cases denied on the basis that the individual was engaging in substantial gainful activity. *Id.*, at n. 20. These cases were not covered by the instructions issued under this court's order, but the Court of Appeals may not have known this, since those instructions were not part of the designated record.

The order narrowing the scope of the class must be interpreted in light of the Eighth Circuit's understanding of the class definition. The Court stated that the class included all those terminated or denied "on the basis that such individuals are capable of engaging in substantial gainful activity." *Id.*, at 967, n. 2. Such a class would include numerous persons denied or terminated either because they were working or because their impairment was only slight—persons for whom no RFC assessment would ever be performed. Considering the Circuit Court's understanding of class scope and the Supreme Court's concerns as to overly-broad class definitions, *id.*, at 973, n. 19, the Eighth Circuit's order clarifying class scope is not surprising. There is no

merit, however, to the assertion that the Court granted the Secretary any relief on the appeal. Indeed, the Secretary herself has not changed her instructions issued in accord with the March 31, 1983 order.

## IV. LIABILITY FOR FEES PURSUANT TO 28 U.S.C. § 2412(d)(1)(A).

### A. *The Standards for Determining Substantial Justification.*

█ The parties agree that the standard for this court to apply in determining whether the position of the United States was substantially justified is set forth in *Iowa Express Distribution, Inc. v. National Labor Relations Board*, 739 F.2d 1305 (8th Cir.1984). The question of whether the position of the government was substantially justified is essentially one of reasonableness in law and fact. *Id*, at 1308.

In assessing the reasonableness of the government's position, *Iowa Express* directs that the court look beyond the litigation posture of the agency and scrutinize the underlying conduct as well. *Iowa Express* adopts the "totality of the circumstances" approach to assessing the "position" of the United States. This approach is a formulation of the so-called "underlying conduct" approach, which requires that the court look both at the underlying conduct and at the litigation position of the agency. *See*, also *Cornella v. Schweiker*, 741 F.2d 170 (8th Cir.1984); *United States v. 341.45 Acres of Land*, 751 F.2d 924 (8th Cir.1984).

### B. *The Underlying Conduct was Unreasonable.*

█ Defendant's imposition of the presumption in dispute in this case was unreasonable and unjustifiable. The presumption denied benefits to severely impaired persons who were obviously unable to work. Defendant's policy was perceived by mental health professionals throughout the nation as irrational and wrong. It lacked a scientific or medical foundation; it was without any colorable or rational basis. The policy resulted in severe and irrepara-

ble harm, re-hospitalizations and re-institutionalizations, loss of medications and disruption of medical care. The policy was inflicted upon those least able to protect their own rights and interests within the administrative process, upon those who would be most harmed simply by attempting to pursue that process. Defendant inflicted severe harm on her most vulnerable clients.,

The extent or pervasiveness of the policy also dictates a finding of unreasonableness. The court has rejected the almost zero percent error rate alleged in defendant's March 31, 1983 testimony. The results of examinations by objective and neutral observers also contradict the Secretary. The General Accounting Office found a potential error rate of 100%. The Administrative Law Judges were reversing 80% of cessation cases. When cases of class members were reevaluated by the disability determination services pursuant to this court's order, reversal rates in cessation cases were as high as 70%. Even for applicants, the disability determination services on reevaluation are finding more than 50% to be eligible.

The length of the deprivation is a further factor indicating unreasonableness. In many cases eligible recipients and claimants will have to wait for as long as three years before receiving the benefits to which they are entitled.

The policy was unreasonable because of the lack of candor in its implementation. Though it was clear to the Social Security Administration employees and agents in the Chicago regional office and in the state disability determination service offices that the presumption was consistent with national office policy, the national office failed or refused to promulgate this policy for public scrutiny in official policy documents. Chief Judge Weinstein of the Eastern District of New York has found that the underlying conduct of the agency constituted a "covert policy", a "fixed clandestine policy", a "confidential policy", a "*sub-rosa* policy", a "back door policy", a "*de facto* secret regulation", a "surreptitious undermining of the law." *City of New York v. Heckler,* 578 F.Supp. 1109, 1115, 1116, 1118 (E.D.N.Y.1984), *affrm.* Court of Appeals, Second Circuit, August 27, 1984. Those findings are entirely consistent with the evidence in this case as it bears on the underlying conduct of the agency here.

The underlying conduct of the defendant during the time that this case was pending between filing of the complaint and issuance of the preliminary injunction was unreasonable. Through the filing of this lawsuit, if not much earlier, the agency was specifically notified of the existence and nature of the unlawful standard and of the harm created thereby. Defendant had seven months from the filing of the complaint to the issuance of the court's order to put its house in order by rescinding the presumption unambiguously. She did not do so. Defendant states that plaintiffs failed to settle the case. The responsibility for administration of the agency is upon defendant; that responsibility is not diminished or excused by defendant's dissatisfaction with plaintiffs' negotiating position.

Defendant's failure to rescind the unlawful presumption while the case was pending was unreasonable. This underlying conduct is inconsistent with defendant's argument that the Chicago region was confused about national policy. If the national office was committed to the requirements of law and was specifically aware of plainly unlawful instructions, why did it not act? Why was the alleged confusion allowed to persist?

The underlying conduct is also unreasonable because it culminated in the issuance of a memorandum, by the highest levels of policy makers within the agency, addressed to the very issue in litigation before this court, which shows that plaintiffs' allegations were correct. According to that memorandum, there were "never" to be allowances for class members. This document was withheld from the court at the time of trial and directly contradicts defendant's litigation position.

C. *The Litigation Position was Unreasonable.*

Defendant's litigation position in defense of the underlying agency action was not substantially justified. Defendant argues that it never denied that there was "confusion" within the Chicago region as to the proper standards and policies for evaluating class members. Plaintiffs, however, did not allege that there was "confusion". Plaintiffs alleged that there was a firm and definite standard being applied within the region. The defense was in substance an outright denial of the allegations in this case, a denial through which defendant placed upon plaintiffs the heavy burden of proving the facts.

This defense also constituted an affirmative assertion that insofar as the region believed that class members could "never" be allowed, it was wrong, and that the national office position was to the contrary. This defense was unwarranted because it was fundamentally untruthful.

The Secretary argues that her trial position assumed that an incorrect standard was being applied in the Chicago region, that she did not attempt to adduce any substantial evidence to contradict the facts, and that "the Secretary never disputed the fact that an incorrect standard for adjudicating mental impairment claims of younger workers was being applied in the Chicago region." These assertions are without merit. This court found on December 22, 1982 that the Secretary had failed to adduce any "substantial" evidence in support of her position as to the facts. The finding that she had failed to succeed does not support a conclusion that she did not try to succeed.

In every brief filed in this court in which the existence of the standard was an issue, the Secretary adamantly denied the facts. Thus on May 20, 1982 the Secretary stated:

The Secretary will show the Court that the "new standard" plaintiffs claim is used in adjudicating disability claims in which a mental impairment is alleged does not exist.

On October 26, 1982, defendant stated:

The Social Security Administration (SSA) has not established the standard alleged by the complaint, nor are the claims of younger individuals with mental impairments not meeting or equal to the listing of impairments adjudicated in accordance with the policy identified by plaintiffs.

On December 3, 1982, defendant filed a Memorandum arguing the following:

... The evidence shows that the alleged "new" standard—that younger individuals that do not meet the listings of impairments are *per se* able to engage in substantial gainful activity and, thus, are not disabled—does not exist.

The heading of the principal argument developed in defendant's December 10, 1982 memorandum was: "The evidence does not establish the existence of a 'new standard'." These quotations are illustrative and not exhaustive. They are representative of the arguments advanced during trial. They reflect defendant's principal litigation position as to the facts.

Defendant argued that the state agency memoranda did not mean what plaintiffs and defendant's own witnesses conceded they meant. Defendant disputed the facts by attempting to create an aura of confusion as to each witness called during seven days of trial and by attempting to point to individual cases and statistical evidence to prove that class member claims could be allowed within the Chicago region. Defendant withheld data during trial and asserted the difficulty of attempting to "prove a negative". Defendant vigorously denied the facts of the case and contested the truthfulness of plaintiffs' allegations.

Defendant asserted that it was fully committed to following the sequential evaluation process outlined in the regulations and that in each instance the documents relied upon by plaintiffs directed that the sequential evaluation process was to be followed. Plaintiffs, however, did not claim that defendant was instructing its agents not to follow the sequential process. The defense

that defendant's agents uniformly were directed to go through all of the steps in the process failed to address the allegations in the case.

Finally, defendant asserted that only its official policy issuances constituted the "policy" of the agency and that plaintiffs could not establish the existence of a new policy because the documents upon which plaintiffs relied did not constitute official policy issuances. Plaintiffs claimed and proved that a standard having the same practical force and effect as a formal policy was being employed and that this standard subverted and trivialized the function to be served by the sequential evaluation process. In this context, defendant's litigation position amounts to the assertion that an agency can undermine and violate the intent of its own regulations with impunity, so long as it is careful to instruct its employees to follow the steps outlined in the regulations. This is not a reasonable position.

With respect to the proof of the underlying facts in this case and the defenses to that proof, neither the underlying conduct of the agency nor the positions taken in court are supportable. Defendant has failed to meet its heavy burden of showing justification either for its underlying conduct or for its litigation position.

## V. LIABILITY FOR FEES PURSUANT TO 28 U.S.C. § 2412(b).

■ Plaintiffs also seek fees pursuant to 28 U.S.C. § 2412(b) on the basis of "bad faith" in defendant's litigation of the facts. During one of the days of trial in this case, top policymakers at the national office of the SSA issued an unequivocal statement that persons such as members of the class here should "never" be allowed benefits. As noted above, this document was not revealed to the court, and it substantially contradicted the truthfulness of facts being adduced by defendant here. In their application for fees, plaintiffs specifically alleged that the existence of this document gives rise to a strong inference of bad faith litigation on the part of defendant and that in the absence of a full and credible expla-

nation this court would be warranted in making a finding of bad faith.

Though the inference of bad faith stands unrebutted the court is reluctant to conclude that responsible government officers acted in bad faith. The court has decided on an hourly rate of $75.00 and this resolves the matter for the present.

## VI. THE FEBRUARY 8, 1984 ORDER AND THE DOCTRINE OF THE LAW OF THE CASE.

Defendant asserts that no fees should be awarded because, according to defendant, the February 8, 1984 order of the Court of Appeals, denying fees solely for the work done on appeal, is completely controlling. The Court of Appeals entered a one-sentence order denying appellate fees on the basis that the court found "the position" of the defendant to be substantially justified, though in error. This order is a part of the mandate to this Court.

Defendant argues that the Eighth Circuit has adopted a "totality of the circumstances" test to determine the reasonableness of the position of the United States. *Iowa Express, supra.* It follows, claims defendant, that the order denying fees on appeal was based upon the Court's scrutiny of the total circumstances of the case and that the Court of Appeals has determined that the entire position of the government, including the underlying action and the litigation position as to the facts, was reasonable.

The Court of Appeals has endorsed the "totality of circumstances" or "underlying action" definition for the term "position" under the Equal Access to Justice Act. It did so, however, only on July 11, 1984, observing:

> Considerable uncertainty has surrounded the question of which government position must be substantially justified.... The Eighth Circuit has not yet decided which government position—litigation or prelitigation—is to be considered to determine substantial justification under the EAJA.

*Iowa Express,* at 1309. The court cannot agree with defendant that the mandate was specifically premised upon the totality of the circumstances/underlying action theory. At the time the mandate issued, the law was in a state of considerable uncertainty.

 Whether or not the February 8, 1984 order is controlling, as urged by defendant, depends upon application of the doctrine of the law of the case. Under that doctrine, a lower court is bound by the mandate of the Court of Appeals as to all matters actually decided by the higher court. *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939); *Thornton v. Carter,* 109 F.2d 316, 319 (8th Cir.1940). The court is bound, however, only to the extent that the Court of Appeals actually decided an issue, and the lower court may consider and decide any matters left open by the mandate. *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979). Where the mandate is silent as to an issue, the law of the case doctrine applies only if the Court of Appeals decided the question by necessary implication. *Carpa, Inc. v. Ward Foods, Inc.,* 567 F.2d 1316, 1320 (5th Cir.1978). On an appeal from the grant or denial of a preliminary injunction, the doctrine is of quite limited scope, especially as to the factual issues which necessarily are interim and provisional in that procedural posture. *U.S. v. U.S. Smelting, Refining & Mfg. Co.,* 339 U.S. 186, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *Benson Hotel Corp. v. Woods,* 168 F.2d 694, 697 (8th Cir.1940).

 Defendant has not shown that the facts actually were litigated on the appeal. The issues raised on appeal were essentially legal in character; those legal issues were determined against the background of this court's findings, which were not challenged on appeal though they were vigorously contested below.

The February 8, 1984 order of the Court of Appeals can fairly be interpreted as expressing no opinion as to the reasonableness of the underlying facts or factual litigation position. The factual holding urged by defendant is not necessarily implied in the order. Since the order was entered on an appeal from a preliminary injunction, to interpret the order as expressing a final determination as to the factual defense is unwarranted. This is particularly true as to the question of defendant's litigation position which the court ascertains in part from briefs and arguments which were not part of the record on appeal. This court remains free to consider the reasonableness of defendant's underlying conduct and litigation posture *de novo,* and it has done so.

The foregoing constitute the Court's Findings of Fact and Conclusions of Law.

IT IS ORDERED:

Plaintiffs are awarded their costs and expenses, and reasonable attorneys' fees against defendant in the following amounts:

1. Southern Minnesota Regional Legal Services, Inc. for its costs and expenses, $26,821.15.

2. Mental Health Law Project, Inc. for its costs and expenses, $13,577.00.

3. Southern Minnesota Regional Legal Services, Inc. as reasonable attorneys' fees, $116,962.50.

4. Mental Health Law Project, Inc. as reasonable attorneys' fees, $53,981.25.

5. William Messinger, for his costs, $48.35.

6. William Messinger, as reasonable attorneys' fees, $1,327.50.

7. The Ohio Legal Rights Service, as reasonable attorneys' fees, $520.00.

8. The Legal Aid Society of Cleveland, as reasonable attorneys' fees, $5,917.50.

9. The Michigan Protection and Advocacy Services for Developmentally Disabled Citizens, Inc. for its costs, $1,345.50.

10. The Michigan Protection and Advocacy Services for Developmentally Disabled Citizens, Inc. for its reasonable attorneys' fees, $7,666.50.

LET JUDGMENT BE ENTERED AC-
CORDINGLY