Claire McDONALD, et al., Plaintiffs,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant.

Civ. A. No. 84–2190–G.

United States District Court,
D. Massachusetts.

Aug. 17, 1988.

Sarah Anderson, Linda L. Landry, Nancy Lorenz, Greater Boston Legal Services, Laura Rosenthal, Mass. Law Reform Institute, Boston, Mass., Alan S. Els, Cambridge and Somerville Legal Services, Inc., Cambridge, Mass., for plaintiffs.

Nicholas Theodorou, Asst. U.S. Atty., Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., Edwin Meese, U.S. Atty. Gen., Washington, D.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER ON FEE APPLICATIONS

GARRITY, District Judge.

This case is currently before the court on plaintiffs' application for attorneys' fees under the Equal Access to Justice Act (the EAJA), 28 U.S.C. § 2412(b) and (d). The named plaintiffs brought suit in 1984, challenging the regulatory policies used by the Social Security Administration to deny disability benefits on the grounds that a claimant does not have a severe impairment. The plaintiffs contended that two of these policies, viz., the agency's application of the so-called severity test, incorporated as step two of the five-step sequential analysis for evaluating disability claims, 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.-921, SSR 82–55 and SSR 82–56, and its refusal to consider the combined effect of several unrelated impairments when applying this test, 20 C.F.R. §§ 404.1522 and 416.922, conflicted with the Social Security Act and violated the claimants' constitutional rights under the Fifth Amendment.

In 1985 this court granted the plaintiffs' motion to maintain the suit as a class action. We certified as a class all those Massachusetts residents whose applications for disability benefits have been or will be denied on the grounds that they do not have a severe impairment. 612 F.Supp. 293. Finding that the regulations challenged by the plaintiffs were indeed inconsistent with the Social Security Act, we later granted the plaintiffs' motions for summary judgment and directed the Secretary accordingly. 624 F.Supp. 375, 629 F.Supp. 1138.[1] The Court of Appeals upheld our invalidation of the Secretary's policy concerning the combination of impairments, but held that the severity regulations, as interpreted by the Secretary in the newly issued Social Security Ruling 85–28, were valid under the Social Security Act. 795 F.2d 1118. The Court of Appeals then remanded the cases of the named plaintiffs to this court, and expressed its expectation that all claimants who had not yet exhausted their administrative remedies would now do so. Soon afterwards the plaintiffs filed a motion for summary judgment with this court, seeking a determination that administrative review would be available to the thousands of claimants whose applications for benefits were denied at step two after the start of the litigation, but who failed to

---

1. The Social Security Benefits Reform Act of 1984 amended the Social Security Act to require the Secretary to consider the combined effects of a claimant's impairments in making the severity determination. Pub.L. 98–460, 98 Stat. 1794 et seq. Our remand to the Secretary on the combination of impairments issue thus concerned only those proposed class members who had received a final decision from the Secretary prior to December 1, 1984, the effective date of the 1984 amendment.

begin or complete the administrative review process. On January 29, 1987, over the defendant's objections, we granted this motion and ordered the Secretary to serve notice upon the affected class members, informing them of their right to revive their claims and resume the administrative review procedure. The Court of Appeals, while noting that the defendant's jurisdictional objections presented "a close and perplexing" question, upheld this court's orders. 834 F.2d 1085 (1987). Earlier this year, the Court of Appeals denied the plaintiffs' application under the EAJA for attorneys' fees incurred in this second appeal. (Mar. 24, 1988).

The Equal Access to Justice Act, which became law in 1980, is designed to reduce the economic deterrents often faced by individuals and private organizations in challenging unreasonable governmental action. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. at 5–6, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984. The EAJA makes the federal government and its agents subject to the common law and statutory exceptions to the general American rule that a party pays its own fees. Thus

> [u]nless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys ... to *the prevailing party* in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses *to the same extent that any other party would be liable under the common law or under the terms of any statute* which specifically provides for such an award.

28 U.S.C. § 2412(b) (emphasis added). The EAJA also extends the government's liability for attorneys' fees beyond that borne by other litigants, providing that

> [e]xcept as otherwise specifically provided by statute, a court shall award to *a prevailing party* other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), in-

cluding proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified* or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).

The plaintiffs claim entitlement to attorneys' fees under either subsection (b) or (d). We agree that the plaintiffs have obtained substantial benefits for the class as a whole, and can thus be considered the "prevailing party" for the purpose of assessing an award of attorneys' fees. Shifting the plaintiffs' legal expenses to the government would not have the effect of spreading the costs proportionally among those benefited by the litigation, however; therefore the Secretary is not liable for attorneys' fees under the common law "common benefit" theory applicable to the United States under § 2412(b). The plaintiffs cannot obtain full recovery of attorneys' fees under § 2412(d), either, because the defendant's position on an important aspect of this litigation was substantially justified. The plaintiffs may recover attorneys' fees, however, for work attributable in whole or in part to issues as to which the government has failed to prove either substantial justification for its positions or special circumstances making an award of fees unjust.

### I. *"Prevailing Party" Status*

██ Before the plaintiffs can recover any attorneys' fees under § 2412, they must demonstrate that they have prevailed against the United States in this litigation. The EAJA itself does not provide a definition of "prevailing party," but the legislative history clearly indicates that Congress intended the term to be given a broad interpretation. In reporting on S. 265, the bill that after amendment became the Equal Access to Justice Act, the House Judiciary Committee noted that

> [u]nder existing fee-shifting statutes, the definition of prevailing party has been the subject of litigation. It is the com-

mittee's intention that the interpretation of the term in S. 265 be consistent with the law that has developed under existing statutes. Thus, the phrase "prevailing party" should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing ... even if he does not ultimately prevail on all issues.

H.R.Rep. No. 96–1418, *supra*, at 11, 1980 U.S.Code Cong. & Admin.News at 4990. Thus in determining the plaintiffs' eligibility for attorneys' fees under the Equal Access to Justice Act we are guided by *Nadeau v. Helgemoe*, 1st Cir.1978, 581 F.2d 275, where, in applying another fee-shifting statute, the Court of Appeals for the First Circuit concluded "that plaintiffs may be considered 'prevailing parties' for attorneys' fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Id.* at 278–79.

The plaintiffs clearly succeeded in obtaining a substantial portion of the benefit sought. As a result of this litigation, the four named plaintiffs had their claims remanded to the agency, which reversed its earlier rulings and awarded them disability benefits. More importantly, all members of the plaintiff class who had received a final decision prior to December, 1984—including some whose failure to exhaust their administrative remedies might otherwise have prevented them from obtaining any review—won the right to have the Secretary reconsider their disability status using the *de minimis* severity test as defined in Ruling 85–28.

For the purposes of determining attorneys' fees, then, the plaintiffs may be considered the "prevailing party" in their litigation against the Secretary. In order to recover a fee award, however, the plaintiffs must also meet the other requirements of either subsection (b) or (d) of the EAJA.

II. *Section 2412(b) and the "Common Benefit" Theory*

▮ Subsection (b) of the EAJA, 28 U.S. C. § 2412, makes the United States liable

for attorneys' fees under the three recognized exceptions to the American rule—the "bad faith," "common fund" and "common benefit" theories. H.R.Rep. No. 96–1418, *supra*, at 9, 1980 U.S.Code Cong. & Admin. News at 4987. The plaintiffs here seek an award under the common benefit theory, an outgrowth of the "historic power of equity to permit ... a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund or property itself or directly from the other parties enjoying the benefit." *Alyeska Pipeline Co. v. Wilderness Society*, 1975, 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141. As the Supreme Court has noted, "nothing ... indicates that the suit must actually bring money into the court as a prerequisite to the court's power to order reimbursements of expenses." *Mills v. Electric Auto–Lite Company*, 1970, 396 U.S. 375, 392, 90 S.Ct. 616, 626, 24 L.Ed.2d 593.

In *Mills* the Court held the defendant corporation liable for the legal expenses incurred by the shareholder plaintiffs in bringing their derivative suit, adopting the reasoning already used by lower courts "to permit reimbursement in cases where the litigation has conferred a substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionally among them." *Id.* at 393–94, 90 S.Ct. at 626–27. To award fees in this context, the Court explained, "is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.* at 396–97, 90 S.Ct. at 627–28. Shortly after the *Mills* case the Court provided more specific and limiting criteria concerning the common fund and common benefit approaches, noting that these exceptions were applied only where "the classes of beneficiaries were small in number and easily identifiable, [t]he benefits could be traced with some

accuracy, and there was reason for confidence that the costs could indeed be shifted with some exactitude to those benefiting." *Alyeska, supra,* at 264–65 n. 39, 95 S.Ct. at 1625–26 n. 39.

The present litigation does not meet these criteria. The plaintiffs seek an award of fees against the United States, a recovery they concede is unlikely to shift the cost of the lawsuit to those upon whom a benefit has been conferred. As the plaintiffs candidly note, other courts have generally refused to make common benefit fee awards against the United States under the EAJA, on the grounds that such an award would shift fees to the general taxpaying public rather than to the actual beneficiaries of the suit. *See, e.g., Grace v. Burger,* D.C.Cir.1985, 763 F.2d 457, *cert. denied,* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565; *Jordan v. Heckler,* 10 Cir. 1984, 744 F.2d 1397, *cert. denied, Bowen v. Jordan,* 1987, — U.S. ——, 108 S.Ct. 287, 98 L.Ed.2d 247.

The plaintiffs challenge this analysis, which they argue makes it virtually impossible to recover a common benefit fee award under the EAJA. It may be true, as the Court of Appeals for the Eighth Circuit has suggested, that the common benefit theory cannot be applied against the United States "except perhaps in the narrow situation where a taxpayer suit is brought to challenge the expenditure under a federal statute." *Linquist v. Bowen,* 8 Cir.1988, 839 F.2d 1321, 1326. As the *Linquist* court has observed, however, "the courts must interpret the express language of the statute." *Id.* at 1327. Therefore, because shifting the plaintiffs' legal expenses to the Secretary would not operate to spread the costs proportionally among those benefited

by the litigation, the plaintiffs cannot recover attorneys' fees under § 2412(b).[2]

### III. Section 2412(d) and "Substantial Justification"

■ Where a party has prevailed in civil litigation against the United States, the court must award attorneys' fees unless it finds that the government's position was "substantially justified," or that "special circumstances make an award unjust." 28 U.S.C. § 2412(d). The "position of the United States," the EAJA explains, refers to the agency action or omission upon which the lawsuit is based, as well as the position taken by the government in the course of litigation. 28 U.S.C. § 2412(d)(2)(D). The burden of proof on the issues of substantial justification and special circumstances rests with the government. *See* H.R.Rep. No. 96–1418, *supra,* at 10, 1980 U.S.Code Cong. & Admin.News at 4989; *United States v. Yoffe,* 1 Cir.1985, 775 F.2d 447, 450. The test for determining whether the government's position was substantially justified is one of reasonableness; i.e., was the government's position reasonable both in law and fact. *Pierce v. Underwood,* 1988, — U.S. ——, ——, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490; *Yoffe,* supra, at 449.

As to one of the issues raised in this suit, the Secretary's pre–1984 policy concerning the combination of impairments, the government has clearly failed to sustain its burden of proving that its position was reasonable. As we explained in striking down this policy, common sense and the plain language of the Social Security Act plainly required the Secretary to consider the combined effects of all of a claimant's impairments on his ability to perform sub-

---

**2.** We do not agree with the plaintiffs that § 2412(c) "provides the answer" as to how the common benefit exception is to be applied against the United States. Subsection (c) provides that except in cases of bad faith, where awards are to be paid by the offending agency, judgments against the United States or its agents "pursuant to subsection (b)" are to be paid by the United States Treasury. 28 U.S.C. § 2412(c)(2). The plaintiffs argue that by authorizing fee awards under the common fund and common benefit theories to be paid by the

Treasury, Congress intended that the cost of successful lawsuits against the government be shouldered by all taxpayers, not just those benefiting from the litigation. Yet the only payments authorized by subsection (c) are for those judgments made pursuant to subsection (b). Subsection (c) creates no new substantive right to attorneys' fees; the plaintiffs' case must meet the criteria of the common law common benefit doctrine before an award can be assessed against the United States Treasury.

stantial gainful work. 629 F.Supp. at 1139–40. The Court of Appeals affirmed this ruling, noting that it found the Secretary's rationale for the policy "difficult to follow." 795 F.2d at 1127.

Evaluating the reasonableness of the Secretary's position on the severity regulations is more complicated. The Court of Appeals reversed this court's invalidation of the step two regulations on the grounds that the severity test, as construed by the Secretary in Ruling 85–28, constituted a valid *de minimis* screening policy. Where a claimant's impairment is minimal, the court explained, the Secretary can validly dismiss the claim on grounds of medical nonseverity without considering the effects of the impairment on the claimant's ability to perform gainful activity. 795 F.2d at 1121–22. A year later, in the case of *Bowen v. Yuckert*, the Supreme Court upheld the facial validity of the severity regulations standing alone. 1987, — U.S. —, 107 S.Ct. 2287, 96 L.Ed.2d 119. According to the Court, "both the language of the [Social Security] Act and its legislative history support the Secretary's decision to require disability claimants to make a threshold showing that their 'medically determinable' impairments are severe enough to satisfy the regulatory standards." *Id.* at —, 107 S.Ct. at 2293. Having prevailed on this issue before both the Supreme Court and the Court of Appeals, the Secretary has obviously demonstrated that his position on the facial validity of the severity regulations was substantially justified.

Our inquiry does not end with the facial validity of the regulations, however. In reversing the circuit court's invalidation of the regulations on their face, the *Yuckert* Court expressly declined to rule on the validity of the regulations as applied, *id.* at — n. 12, 107 S.Ct. at 2298 n. 12, leaving open the question of whether "this facially valid regulation has been applied systematically to deny benefits to claimants who *do* meet the statutory definition of disability." *Id.* at —, 107 S.Ct. at 2298 (O'Connor, J., concurring) (emphasis in original). In fact, as Justice O'Connor noted in her concurring opinion in the *Yuckert* case, a

considerable body of empirical evidence "suggests that step 2 has been applied systematically in a manner inconsistent with the statute." *Id.* Tellingly, "all 11 regional Federal Courts of Appeals have either enjoined the Secretary's use of the step 2 regulation or imposed a narrowing construction upon it," *id.* (footnotes omitted).

The defendant argues that the issue of the application of the regulations was never reached in this case, and is thus irrelevant to the EAJA fee award determination. The plaintiffs certainly raised the issue; throughout the litigation they argued that the severity policy was invalid not only as written but also as applied. Citing the dramatic increase in the percentage of claims denied since the severity regulations were promulgated, and the lack of communication within the agency as to the proper interpretation of those regulations, the plaintiffs challenged the Secretary's contention that the severity test had been applied exclusively to screen out groundless claims.

It is true that because this court found the regulations to be inconsistent with the Social Security Act, we did not reach the validity of application question in our initial opinion. 624 F.Supp. 375, 380 n. 5. Later we denied the plaintiffs' motion for a declaration that the severity regulations had been improperly applied prior to the issuance of Ruling 85–28, on the grounds that the Court of Appeals' 1986 decision had foreclosed the issue. Slip op. at 4, 7 (Jan. 29, 1987). In that ruling the Court of Appeals observed that the statistics "tend to bear out plaintiffs' contention that, whatever the Secretary may have intended in 1978, the severity regulation has become, in practice, more than a *de minimis* screening device." 795 F.2d at 1124. Only the issuance of Ruling 85–28, the court explained, precluded its having to consider whether the review procedures of the Social Security Act provided claimants with "sufficient protection against what, according to some, has been a deliberately illegal construction of the Secretary's regulations." *Id.* Those claimants could now be

referred to their administrative remedies "[b]ecause we assume that the Secretary will hereafter endeavor to apply the proper standards at the severity stage." *Id.* at 1126.

Thus, although Ruling 85–28 made an explicit determination of the issue unnecessary, the Court of Appeals implied that the severity regulations had been improperly applied. This implication provided the basis for the significant relief granted to the plaintiff class, viz., the right to have their claims reconsidered at the agency level under the severity regulations as clarified by Ruling 85–28. Pursuant to this court's order, later affirmed by the Court of Appeals, this relief was extended even to those class members who had failed to complete their administrative remedies while this case was pending.[3] Since the plaintiff class had already won the right to have their claims reevaluated at the agency level under the proper combination of impairments standard, further administrative reconsideration would be necessary only if the agency had misapplied the severity regulations. For all intents and purposes, the plaintiffs had prevailed on their challenge to the severity regulations as applied.

The litigation of the plaintiffs' claims, then, did involve the issue of the validity of the severity regulations as applied. Throughout the case, in fact, the government has defended the regulations both as written and as applied. For the purposes of this EAJA determination, it bears the burden of proving that this position was substantially justified. Yet the government has offered little or no justification for the Secretary's application of the severity test, even in the face of substantial evidence—the statistics as to the number of claims denied, the rulings of many other courts and, perhaps most significantly, the Secretary's own Ruling 85–28—indicating that the regulations had been misapplied.

Since the evidence before us indicates that the agency may have systematically applied the regulations in a manner inconsistent with the Social Security Act, we find that the government has failed to sustain its burden of showing that its position on the validity of the severity regulations as applied was substantially justified. The plaintiffs are thus entitled to recover the fees incurred in challenging this position.

### IV. *The Scope of the Plaintiffs' Recovery of Fees*

Although they prevailed on significant aspects of their litigation, the plaintiffs did not succeed in their challenge to the facial validity of the severity regulations. The Equal Access to Justice Act does not indicate the scope of recovery available to a prevailing party who has succeeded on only some of its claims. Because the EAJA was designed to facilitate challenges to *unreasonable* government action, "it would contravene the purposes of the Act to require the government to bear the expense of defending even its reasonable positions." *Matthews v. United States*, 11 Cir.1983, 713 F.2d 677, 684. By the same token, "it is proper for [courts] to assess attorneys' fees and costs against the government for a separate phase or portion of the litigation in which it lacks substantial justification—even though the government may have adopted wholly reasonable positions in other facets of the case." *Ellis v. United States*, Fed.Cir.1983, 711 F.2d 1571, 1576. *See also Cinciarelli v. Reagan*, D.C.Cir.1984, 729 F.2d 801, 805; *Goldhaber v. Foley*, 3rd Cir.1983, 698 F.2d 193, 197.

The fees incurred by the plaintiffs in this case do not lend themselves to easy apportionment, however. At each step of the litigation, the plaintiffs asserted that the severity regulations, both as written and as applied, had resulted in the denial of dis-

---

**3.** In affirming the order, the Court of Appeals noted that it regarded this to be an "exceptional" case. At 1092. Later that court denied the plaintiffs' EAJA application for fees incurred in litigating this appeal. The "close and perplexing" question presented in that appeal, however, concerned this court's jurisdiction to issue the order, not the nature of the relief to be afforded to the affected members of the plaintiff class. The fact that the defendant was justified in challenging the order on jurisdictional grounds does not justify its position on the application of the severity regulations.

ability benefits to claimants entitled to those benefits under the Social Security statute. Work on these two different challenges to the denial of benefits necessarily overlapped, and could thus be attributed to either theory.

In determining the proper apportionment of fees incurred in litigating both the justified and the unjustified positions taken by the Secretary, we are guided by the case law developed under other fee-shifting statutes—law that Congress indicated was to guide the courts in determining prevailing party status under the EAJA. *See* H.R. Rep. No. 96–1418, *supra*, at 11, 1980 U.S. Code Cong. & Admin.News at 4990; *Grand Boulevard Improvement Association v. City of Chicago*, N.D.Ill.E.D.1982, 553 F.Supp. 1154, 1167 (consulting § 1988 case law to determine fee award under EAJA for partially successful litigant). In applying the Civil Rights Attorneys' Fees Act, 42 U.S.C. § 1988, the Supreme Court has noted that in many civil rights cases

the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart*, 1983, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40.

Applying the *Hensley* approach to fee petitions under the EAJA, other courts have awarded fees for the case as a whole to parties who had prevailed on only some of their claims. *See Haitian Refugee Center v. Meese*, 11 Cir.1986, 791 F.2d 1489, 1500 (plaintiffs entitled to fees for all work performed where government's unjustified positions involved "the same factual bases" as its justified positions, and the issues raised in the latter were "intertwined with the remaining legal theories"), *aff'd in*

part and rev'd in part on rehearing, 804 F.2d 1573; *Wedra v. Thomas*, S.D.N.Y. 1985, 623 F.Supp. 272, 276 (claims on which plaintiff was unsuccessful shared "a common core of facts" with its successful claims). *See also Martin v. Lauer*, D.D.C. 1983, 562 F.Supp. 503, 506 (partially prevailing plaintiff may recover fees for time spent "advancing an alternative legal theory intended to remedy the same injury"), *aff'd in part and rev'd in part*, D.C.Cir. 1984, 740 F.2d 36; *Mental Health Association of Minnesota v. Heckler*, D.Minn. 1985, 620 F.Supp. 261, 264 (where work in EAJA case was "devoted to advancing the litigation as a whole or where factual proofs related both to the reasonable positions and the unreasonable positions of the government, the appropriateness of awarding fees should turn on the nature of the relief obtained."). The *Hensley* Court having rejected strict mathematical apportionment, the proper focus is on the severability of the successful and unsuccessful claims, and the results obtained by the plaintiffs. *Wedra, supra*, at 276.

The plaintiffs' successful challenge to the severity regulations as applied raised largely the same issues as their unsuccessful attack on the facial validity of those regulations. The two different theories were clearly advanced to remedy the same injury, and in fact the plaintiffs essentially succeeded in winning the relief they had sought. Apparently only one aspect of their litigation strategy—the opposition to the defendant's motion for a stay of this court's order enjoining the use of the severity regulations—was related solely to their claim that those regulations were facially inconsistent with the Social Security Act. No fees will be awarded for this work. The rest of the billable hours claimed, however, are attributable in whole or in part to the plaintiffs' successful challenge to the Secretary's unjustified positions as to the application of the regulations and the treatment of multiple impairments. Fees for this work will be assessed against the government.[4]

**4.** In addition to their legal expenses connected with the original litigation, the plaintiffs request

## V. *The Amount of the Award*

 The plaintiffs in this case were represented by attorneys from several legal services organizations, for whose work they seek fees at different rates ranging from $75 to $120 per hour. The EAJA provides that the amount of fees awarded shall be based on the prevailing market rates, except that "attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A).

The Supreme Court recently provided further guidance on the issue of "special factors," explaining that "it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." *Pierce, supra,* —— U.S. at ——, 108 S.Ct. at 2553. The attorneys who represented the plaintiffs in this case are all specialists in the law of public assistance benefits; Attorney Sarah Anderson in particular demonstrated an impressive level of expertise that served to educate both the court and the other attorneys. All applicants kept good

records of the time they spent on the instant litigation, and the accuracy of these records has not been challenged by the defendant.

In conformity with the statute, we determine that there has been a substantial increase in the cost of living since 1981 when the EAJA was originally enacted. *See Sierra Club v. Secretary of Army,* 1 Cir. 1987, 820 F.2d 513, 523. Also we determine that there is a relative shortage of attorneys possessing the specialized skills brought to bear by the applicants; and that the combination of these factors justifies fees at the rate of $100 per hour for lead counsel. Other attorneys are compensated at the rate of $75 per hour, since they would have been awarded fees at about $60 per hour in 1981. Fees for work performed by the two paralegals will be compensated at the requested rates of $25 and $50 per hour, reflecting their relative levels of experience. Although the services rendered covered a period of about four years, the hourly rates awarded represent the court's opinion of fair averages for the periods covered.

IT IS HEREBY ORDERED that the government defendant pay attorneys' fees, apportioned as follows:

---

an award for the fees incurred in bringing the EAJA motion itself—in effect, seeking fees for fees. The availability of such fees under the EAJA turns on a question of statutory interpretation that neither the parties nor the Court of Appeals for this circuit have yet addressed—viz., whether fees for an EAJA motion are available whenever the government's unjustified positions on the merits or in the underlying litigation result in a fee award to the prevailing party, or only when the government takes an unjustified position on the EAJA application itself.

Other circuit courts are divided on the issue. Some have held that the award of fees for fees turns on the reasonableness of the government's position in the fees litigation, *see Russell v. National Mediation Board,* 5 Cir.1985, 775 F.2d 1284, 1291 n. 8; *Cornella v. Schweiker,* 8 Cir. 1984, 741 F.2d 170, 171; *Rawlings v. Heckler,* 9 Cir.1984, 725 F.2d 1192, 1196; but as the District of Columbia Circuit has pointed out in dictum, this approach creates "the distinct possibility of an infinite regression of EAJA litigation." *Cinciarelli, supra,* at 810. We agree with

that court that a *"per se* fee-shifting rule is the least objectionable exit from this Kafkaesque judicial nightmare." *Id.* See also *Trichilo v. Secretary of Health and Human Services,* 2 Cir. 1987, 823 F.2d 702, 708, *reaff'd,* 832 F.2d 743; *Bonanza Trucking Corp. v. United States,* CIT 1987, 669 F.Supp. 430, 432; *Weber v. Weinberger,* W.D.Mich.1987, 651 F.Supp. 1379, 1391.

In reaching this decision we also take note of the fact that Congress amended the EAJA in 1985 to clarify that "the government's position" refers to both the litigation position and the underlying agency actions. The availability of fees should thus turn on the reasonableness of the government's overall position in the dispute, not just individual aspects of its litigation strategy. Moreover, the remedial purpose of the EAJA is best served by awarding fees against the government for all phases of litigation made necessary by its unreasonable actions. *See also Trichilo, supra,* at 707. For these reasons, we award fees for the work performed by plaintiffs' attorneys on the EAJA application.

to Greater Boston Legal Services: $31,658.75
for work performed by

| | | | |
|---|---|---|---|
| Sarah Anderson, | 146 hrs. 14 min.[5] | at $100 | = $14,623.33 |
| Nancy Lorenz, | 77 hrs. 10 min. | at $100 | = $ 7,716.67 |
| Sandra Smales, | 24 hrs. 55 min. | at $ 75 | = $ 1,868.75 |
| Laura Rosenthal, | 6 hrs. 30 min. | at $100 | = $ 650.00 |
| Jean Davis, | 122 hrs. 30 min. | at $ 50 | = $ 6,125.00 |
| Alessandra de Blasio, | 27 hrs. | at $ 25 | = $ 675.00 |

to Neighborhood Legal Services: $28,457.92
for work performed by

| | | | |
|---|---|---|---|
| Sarah Anderson, | 160 hrs. 31 min. | at $100 | = $16,051.67 |
| Linda Landry, | 165 hrs. 25 min. | at $ 75 | = $12,406.25 |

to Massachusetts Law Reform Institute: $5,795.00
for work performed by

| | | | |
|---|---|---|---|
| Laura Rosenthal, | 57 hrs. 57 min. | at $100 | = $ 5,795.00 |

to Cambridge and Somerville Legal Services: $3,387.50
for work performed by

| | | | |
|---|---|---|---|
| Allan Ells, | 45 hrs. 10 min. | at $ 75 | = $ 3,387.50 |

---

5. The plaintiffs sought a total of 174 hours and 48 minutes for this work. We have deducted 28 hours and 34 minutes from this amount, time the plaintiffs attributed to their opposition to the defendant's motion for a partial stay. For the same reason, we have also deducted 7 hours and 30 minutes from the 32 hours and 25 minutes claimed for Sandra Smale's work, and 15 hours and 35 minutes from the 181 hours claimed for Linda Landry's work.